**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Perry Russell TUNNELL,**
**Defendant-Appellant.**

**Nos. 81–2095, 81–2293**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1982.

Rehearing Denied April 1, 1982.

---

R. L. Whitehead, Jr., Longview, Tex., for defendant-appellant.

Christian Harrison, Asst. U. S. Atty., Tyler, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Perry Russell Tunnell was indicted for a RICO substantive and a RICO conspiracy offense, 18 U.S.C. §§ 1962(c) and 1962(d), together with Odessa Mae (Mildred) French and King Russell. Prior to trial Russell pled guilty to misprision of a felony. The jury found Tunnell and French guilty on both counts. Thereafter, pursuant to special findings by the jury, the court ordered the forfeiture under 18 U.S.C. § 1963(a) of the Pines Motel, owned by Tunnell.

In 1967 Tunnell purchased the Pines Motel at Kilgore, Texas. For over three decades, the motel had been known as a place of prostitution. When Tunnell was imprisoned for tax evasion in 1974, he leased the motel to French for one year. Following two successive annual renewals, a five year lease was executed in 1977. In each instance, the lease payment was $1,500 per month.

The government maintains that Tunnell and French jointly operated the Pines Motel as a place of prostitution and that they bribed law enforcement officials, specifically King Russell, a Justice of the Peace, and Dwight Watson, a local constable, to permit their operations. Russell testified that he had an arrangement with Tunnell whereby Tunnell reimbursed him the sums he paid the prostitutes at the motel. The testimony of several witnesses—including prostitutes, motel employees, and law enforcement officials—linked Tunnell to the prostitution activities and to the corruption of the constable and the justice of the peace.

Tunnell admitted knowing Russell and Watson, acknowledged the longstanding reputation of the motel, but denied knowledge of any bribes and the reimbursement scheme.

As consolidated for our consideration, Tunnell raises eight issues on appeal: (1) whether reimbursement of a peace officer for monies paid to a prostitute constitutes bribery; (2) whether the securing of "sexual favors" for a peace officer constitutes bribery; (3) whether sufficient evidence of the charged bribery offense in 1974 was produced; (4) whether sufficient evidence was adduced to demonstrate aiding and abetting in the RICO predicate offenses; (5) whether he was denied the sixth amendment right to confrontation when the government used Russell's videotape testimony; (6) whether the district court erred in allowing the videotape testimony into evidence without the government first se-

curing a certificate from the Attorney General as prescribed by 18 U.S.C. § 3503; (7) whether the forfeiture of the motel under 18 U.S.C. § 1963(a) constituted cruel and unusual punishment forbidden by the eighth amendment; and (8) whether error occurred in the form of the submission of the special verdict on the forfeiture issue. Our discussion of these issues in part overlaps.

### Bribery

■ In the predicate offenses underlying the RICO indictment, Tunnell was charged with bribing law enforcement officials and with aiding and abetting French in certain acts of bribery. The government accused Tunnell of paying Russell to disregard his official duties, contrary to article 36.02 of the Texas Penal Code.[1] Russell testified that Tunnell reimbursed sums Russell paid the prostitutes at the Pines Motel. In return, Russell considered the prostitutes "his girls" and protected them from prosecution. The government contends that this conduct violated article 36.02.

Tunnell insists that the charged conduct constituted a violation of article 36.07 of the Texas Penal Code which states:

(a) A person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer any benefit on a public servant for the public servant's having exercised his official powers or performed his official duties in favor of the actor or another . . . .

(c) An offense under this section is a Class A misdemeanor.

Article 36.07 involves a misdemeanor; article 36.02 involves a felony. Advancing the well-established principle that if two legal provisions apply, one general and one specific, the specific takes precedence, Tunnell argues that his conduct is punishable by the

misdemeanor statute since it is more specific. If this contention is correct, this criminal act may not serve as a RICO predicate offense because by definition, the "racketeering activity" proscribed by RICO relates only to state offenses punishable by imprisonment for more than one year. 18 U.S.C. § 1961(1). A violation of article 36.07 is not punishable by imprisonment for more than one year. However, we do not find Tunnell's reasoning persuasive.

It is apparent from the text of article 36.07 that the proscribed offense concerns a payment or "gift" for past actions of the public servant. If any doubt exists in that regard, it evaporates with a reading of the commentary following the article which informs that the section involves an implied bribery for future conduct of the public employee. The commentary further notes: "This offense is a lesser included offense of bribery . . . ." Assaying the conduct of Tunnell and French as charged and proven against the backdrop of articles 36.02 and 36.07, we are convinced that article 36.02 is applicable. In any event, given the language and rationale of our decision in *United States v. Salinas*, 564 F.2d 688 (5th Cir. 1977), we conclude that the evidence produced supports the propriety of the charge under article 36.02.

■ We similarly reject Tunnell's contention that French's action in furnishing the services of a prostitute free of charge to the peace officers does not constitute the predicate crime of bribery. Tunnell would limit the term "benefit" to pecuniary gain, citing Texas Penal Code article 1.07(a)(6), which provides: "In this code . . . 'benefit' means anything reasonably regarded as economic gain or advantage, including benefit to any other person in whose welfare the beneficiary is interested."

---

1. In 1974, article 36.02 read:
 (a) A person commits an offense if he offers, confers, or agrees to confer any benefit on a public servant, party official, or voter:
 (1) with intent to influence the public servant or party official in a specific exercise of his official powers or a specific performance of his official duties; . . .

 (b) A public servant or party official commits an offense if he knowingly solicits, accepts or agrees to accept any benefit on the representation or understanding that he will be influenced in a specific exercise of his official powers or specific performance of his official duties.

The evidence in the record establishes the economic value of the services of a prostitute. These services were provided at no cost. This constitutes the bestowing of an economic gain, a benefit, upon the recipient public official. The argument to the contrary is not convincing.

### Time of Bribery

Tunnell contends that the government failed to establish the acts of bribery allegedly committed in February and March of 1974. In response to a motion for a bill of particulars, the government stated that Tunnell furnished Russell with the sexual company of Linda Angelo on March 2 or 3, 1974. The evidence establishes that Ms. Angelo had been shot in the course of a robbery on March 2 and had not been with Russell on either date. Because the evidence does not prove the exact date detailed in the bill of particulars, Tunnell argues that this predicate crime is not proven and the RICO offense based thereon is not supported. We cannot agree.

In this circuit, it is established that the prosecution is "not required to prove the exact date; it suffices if a date reasonably near is established." *United States v. Grapp*, 653 F.2d 189, 195 (5th Cir. 1981) (*citing Russell v. United States*, 429 F.2d 237, 238 (5th Cir. 1970) ("within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient.")). *See United States v. Vahalik*, 606 F.2d 99 (5th Cir. 1979). In view of the evidence in this case, the precise date of the offense is not significant.

The record contains ample evidence that the named prostitute did engage in sexual relations with the justice of the peace. Both testified to the fact of the sexual relations, although Russell was uncertain of the dates. The prostitute attested to having sexual intercourse with Russell on three occasions. Her testimony indicates that these acts occurred during a six month period from October 1973 to March 1974. Other evidence reflects that during 1974 Tunnell reimbursed Russell for monies he paid prostitutes at the Pines Motel. We find no merit in this assigned error.

### Aiding and Abetting

Tunnell challenges the sufficiency of the evidence relating to his aiding and abetting French in her acts of bribery. Specifically, Tunnell argues that the mere act of leasing his motel to French, even with knowledge that she intended to conduct a prostitution operation on the premises, is not enough to link him to the bribery of public officials as a principal under 18 U.S.C. § 2. While simple presence at the scene of a crime is insufficient to convict one of aiding and abetting, *United States v. Longoria*, 569 F.2d 422 (5th Cir. 1978), the record establishes that Tunnell played an active role in the prostitution business and in the corruption of local officials. He obviously was more involved than he was prepared to admit.

Testimony received at trial demonstrated that Tunnell often ran the prostitution business, even though French had leased the motel. He personally passed approval on new prostitutes, bribed the local justice of the peace and constable, told others about the operation, and bragged that if it "wasn't for his politicking ... Mildred [French] and Watson wouldn't have a job." In short, the record is replete with evidence that Tunnell possessed active knowledge of the racketeering operations conducted on the motel premises and involved himself in these activities.

### Confrontation Right and the Sixth Amendment

Shortly before the trial of French and Tunnell was to commence, Russell suffered a stroke. He was scheduled to testify as a prosecution witness. Russell's hospitalization obviated the possibility of his testifying in court. The trial was continued for a month; Russell remained incapacitated. The government then moved for authority to take Russell's testimony by videotape

deposition in accordance with Rule 15(a) of the Federal Rules of Criminal Procedure.[2]

■ The trial court permitted the government to take Russell's deposition to preserve evidence. Russell's physical condition required that the scheduling of the deposition be deferred for several weeks. Finally, about three months after his stroke, his deposition was taken using videotape. Both defendants were present at the deposition, attended by their counsel, and Russell was examined and cross-examined.

Despite the procedural safeguards employed in the taking of Russell's videotaped deposition and its later introduction into evidence, Tunnell alleges that the use of the deposition deprived him of his sixth amendment guarantees of a public trial and the right to confront the witnesses against him. Tunnell is not able to support this assertion by reference to any decision. We find the opinions of the Supreme Court that touch on the subject of confrontation suggest that the scheme outlined by Rule 15(a), and implemented in this case, is constitutional. *See California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). *Cf. Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). We are not persuaded by Tunnell's sixth amendment argument.

■ As an ancillary contention of error, Tunnell argues that since the Attorney General did not certify the taking of Russell's deposition according to 18 U.S.C. § 3503, the district court lacked the authority to allow the deposition. At first blush, this assertion appears meritorious. However, it does not withstand close scrutiny.

Section 3503 was enacted into law as part of Title VI of the Organized Crime Control Act of 1970. As of that time, the government was not allowed to take preservatory depositions. Four years later the Federal Rules of Criminal Procedure were amended, including the revision of Rule 15(a) which permits of depositions by either party. Rule 15(a) requires approval of the court; it does not require the Attorney General to issue a certificate to the effect that the person involved in the legal proceeding in which the deposition is taken "is believed to have participated in an organized criminal activity," as is required for a deposition taken pursuant to 18 U.S.C. § 3503(a).

There is no conflict between amended Rule 15(a) and section 3503(a). The adoption of each must be placed in perspective. As above noted, when section 3503(a) was enacted, no mechanism existed for the government to take preservatory depositions. This statute is narrowly drawn, it is limited to situations involving organized criminal activity. But, as reflected by the Notes of Advisory Committee on 1974 Amendments to Rules of Criminal Procedure the same considerations did not underlie the modification of Rule 15(a):

> Dealing with the issue of government depositions so soon after the enactment of 18 U.S.C. § 3503 is not inconsistent with the congressional purpose. On the floor of the House, Congressman Poff, a principal spokesman for the proposal, said that the House version was not designed to " 'limit the Judicial Conference of the United States in the exercise of its rule-making authority ... from addressing itself to other problems in this area or from adopting a broader approach." ' 116 Cong.Rec. 35293 (1970).

The order of the court, allowing the deposition of the justice of the peace, was within the authority of the trial court under Rule 15(a). Certification under 18 U.S.C. § 3503(a) was not required.

### *Hostile Witness*

■ During the course of deposing Russell, the government propounded several

---

**2.** Rule 15(a) provides in part:

> Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged, be produced at the same time and place ...

leading questions. When the videotape was offered in evidence, Tunnell's counsel raised multiple objections, a number of which were sustained. Thereafter, the prosecution asked the trial judge to reconsider his rulings on the ground that Russell was a hostile witness within the meaning of Federal Rule of Evidence 611(c).[3] After viewing and hearing the full deposition, the trial judge agreed; the leading questions were allowed. On appeal, Tunnell claims that the reversal of the rulings and classification of Russell as a witness hostile to the government constituted a gross abuse of discretion. We do not agree.

The videotape made it possible for the trial court to gauge Russell's attitude more accurately than would have been possible with just a cold deposition record. This is a very persuasive argument for the use of videotape depositions in lieu of the traditional transcriptions. The trial judge was able to note Russell's attitude reflected by his motions, facial expressions, demeanor, and voice inflections. As a result, the trial judge concluded that Russell evinced a hostility to the prosecution, which made leading questions appropriate. This is a judgment call which we will not disturb absent a demonstration of abuse of discretion. We find no such abuse.

### Forfeiture

██ Tunnell raises the question whether the order forfeiting his ownership in the Pines Motel to the government, as is provided for by the RICO statutes, represents cruel and unusual punishment prohibited by the eighth amendment. Yet, Tunnell recognizes the rule announced in *United States v. Huber*, 603 F.2d 387, 397 (2d Cir. 1979), that 18 U.S.C. § 1963's forfeiture measures are constitutional when "keyed to the magnitude of a defendant's criminal enterprise, as it is in RICO." The evidence in this case,

establishing that Tunnell operated the Pines Motel as a place of prostitution during the entire period of his ownership and corrupted local officials to maintain his business, demonstrates the magnitude of his offense. The forfeiture does not contravene the eighth amendment.

██ Similarly without weight is the argument that the trial court erred in the form of submission to the jury concerning the forfeiture special verdict. Tunnell argues that the jury was not required to discern what portion of the Pines Motel was utilized in the prostitution enterprise and what part was used in a legitimate fashion. However, the submission in question was approved by a panel of this court in *United States v. L'Hoste*, 609 F.2d 796 (5th Cir. 1980). Notwithstanding Tunnell's protestations that *L'Hoste* is not controlling because L'Hoste failed to object to the form of the inquiry, as we therein noted, "the present case does not involve a factual issue that has been left undecided by the jury." *Id.* at 814. Tunnell's interest in the Pines Motel and its acquisition and maintenance and use in violation of RICO were facts determined by the jury; "all that remained for the district court was to order forfeiture under section 1963." *Id.*

For the foregoing reasons the judgment of the district court is AFFIRMED.

---

**3.** Federal Rule of Evidence 611(c) provides:

Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party or a witness identified with an adverse party, interrogation may be by leading questions.