**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronald Joseph PUMA, a/k/a Ronny Puma, Donnie K. Nichols, a/k/a Dead Weight and DW, and Ernest Raymond Dodd, a/k/a RD, Defendants–Appellants.**

No. 90–1420.

United States Court of Appeals, Fifth Circuit.

July 22, 1991.

Rehearing Denied Aug. 29, 1991.

---

George C. Thompson, Jr., Fort Worth, Tex. (Court-appointed), for Puma.

Richard A. Anderson, Dallas, Tex., Gene Storrs, Amarillo, Tex., for Nichols.

Donald S. Gandy, Fort Worth, Tex., for Dodd.

Delonia A. Watson, Asst. U.S. Atty., Dept. of Justice, U.S. Attys. Office, Dallas, Tex., Marvin Collins, Fort Worth, Tex., for U.S.

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Ronald Puma, Donnie Nichols, and Ernest Dodd appeal their convictions following a jury trial for conspiracy to produce, transport, and sell amphetamines in violation of federal narcotics statutes. They urge insufficiency of evidence to support their convictions, incorrect application of the sentencing guidelines, defective indictment, and errors in the admission of evidence.

We reject all defendants' contentions except that we find that the trial court did not expressly find that Nichols could have reasonably foreseen that the conspiracy of

which he was convicted would involve 390 pounds of amphetamine. We vacate Nichols' sentence and remand to the trial court for any additional findings and resentencing.

### I.

Robert Payne was originally indicted with the appellants but testified pursuant to a plea agreement. Payne testified that Ernest Dodd sold amphetamine powder to him in 1985 for Payne's personal use, followed in 1985 and 1986 by larger quantities of amphetamine powder which Payne in turn sold for a profit. According to Payne, this relationship continued until February of 1988.

Payne testified that by 1988 Dodd was unable to meet his need so he decided to acquire a new source of amphetamine. In the meanwhile Payne learned to convert amphetamine oil to powdered amphetamine by observing the conversion process at Dodd's wrecker service in Fort Worth.

Payne testified that he met Ronald Puma in 1988. According to Payne, Puma had supplied Dodd with amphetamine oil, but Dodd had fallen into debt with Puma. Payne testified that he and Puma reached an agreement in 1988 under which Puma would sell amphetamine oil to Payne who would convert the oil into powder and sell it to others. Payne also sold chemicals necessary for amphetamine production to Puma. According to Payne, Puma and Payne discussed both these sales of amphetamine powder and Puma's own production process. For example, Payne testified that in December, 1988, he and Puma discussed replacing laboratory equipment destroyed in a chemical explosion. The relationship between Puma and Payne ended when agents from the Drug Enforcement Agency searched Payne's house in July of 1989.

The government tied Donnie Nichols to the conspiracy through his relationship with Oda Lee Ratheal, a steady customer of Payne's and an indicted co-conspirator who testified in this case pursuant to an agreement with the prosecution. Ratheal met Nichols in 1984. In March, 1986, Ra-

theal began to purchase amphetamine powder from Payne. Ratheal testified that he sold amphetamine powder to Nichols almost every time that Ratheal purchased it from Payne. According to Ratheal, Ratheal informed Nichols that Payne was Ratheal's supplier. Ratheal's wife, Dodie, testified that Nichols assisted her husband in weighing, cutting, and bagging amphetamine and that Nichols had informed her that he sold amphetamine to others. In Oda Lee Ratheal's opinion, Nichols could not use all the amphetamine that Nichols purchased from Ratheal.

In 1986, Oda Lee Ratheal was injured in an automobile accident. Ratheal testified that Nichols assisted his wife Dodie in purchasing and weighing amphetamines while Oda Lee Ratheal was hospitalized, accompanying Dodie Ratheal on her trips to a truck stop where they picked up their supply of amphetamine. After Ratheal's recovery, Nichols accompanied Ratheal when Ratheal travelled to Payne's home to purchase amphetamine. Ratheal also purchased amphetamine with Nichols' money.

On September 22, 1989, appellants, along with nineteen others, including Payne and the Ratheals, were charged in a 76–count indictment with the violation of federal drug statutes, money laundering offenses, and violations of the Travel Act. The indictment also charged that Puma had used profits from a continuing criminal enterprise to purchase certain property which in turn had been used to facilitate the continuing criminal enterprise.

Dodd was convicted for conspiracy to produce and distribute amphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and given a twenty-year sentence. Nichols was similarly convicted and sentenced to serve 151 months. Puma was sentenced to 360 months upon his conviction for conspiracy to violate 21 U.S.C. §§ 841(a)(1), 846, 848 and 853, and 18 U.S.C. §§ 1952(a)(3), 1956(a)(1)(B)(i), and 2. He also forfeited the Diamond Oaks Motor Company and $5,030.00 which were found by a jury's special verdict to have been obtained through the profits of a continuing criminal

enterprise, pursuant to 21 U.S.C. § 853(a)(1)(3).

## II.

Puma raises eight points of error. All are without merit.

### A. Constitutionality of Sentencing Guideline 3E1.1; Sufficiency of Evidence; Defective Indictment

 Puma first contends that Sentencing Guideline 3E1.1 violates his Sixth Amendment right to a jury trial. An identical contention was considered and rejected in *United States v. White et al.*, 869 F.2d 822, 826 (5th Cir.), *cert. denied*, 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). Puma next argues that there was not sufficient evidence to support his convictions because certain witnesses were given an incentive to testify against him by plea agreements. Such plea agreements raise issues of credibility. Credibility was for the jury. *United States v. Martin*, 790 F.2d 1215, 1219 (5th Cir.), *cert. denied*, 479 U.S. 868, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986).

 Puma finally urges that his indictment was fatally defective in not alleging the quantities of amphetamine it charged him with possessing. This argument is made for the first time in this appeal. We therefore review only to ascertain whether the indictment stated the essential elements of the charged offenses. *United States v. Wilson*, 884 F.2d 174, 179 (5th Cir.1989); *United States v. Campos–Asencio*, 822 F.2d 506, 508 (5th Cir.1987). Quantity is not an element of any of the charged offenses. *United States v. Medina*, 887 F.2d 528, 532 (5th Cir.1989) (stating elements of violation of 18 U.S.C. § 2); *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1350 (5th Cir.1988) (stating elements of violation of 18 U.S.C. § 1952); *United States v. Morgan*, 835 F.2d 79, 81 (5th Cir.1987) (stating elements of violation of 21 U.S.C. § 841(b)(1)(A)); *United States v. Sperling*, 506 F.2d 1323, 1344 (2d Cir.1974) (stating elements of 21 U.S.C. § 848), *cert. denied sub nom. Goldstein v. United States*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). The indictment, therefore, contained the essential elements of the offenses charged and is sufficient.

### B. Puma's Objections to his Sentence

Puma raises five objections to his sentence. First, he urges that the trial court violated Fed.R.Crim.P. 32(c)(3)(D). Second, Puma claims that it was based on inaccurate information. Third, Puma argues that the disparity between his sentence and the sentence of his co-conspirators, especially Payne's sentence violates the "spirit" of the sentencing guidelines. Fourth, Puma argues that the trial court ordered forfeiture in violation of Fed.R.Crim. 7(c), (e) and 31(e). Finally, Puma alleges that there is insufficient evidence to support forfeiture of certain automobiles.

#### 1. *Fed.R.Crim.P. Rule 32(c)(3)(D)*

 Fed.R.Crim.P. 32(c)(3)(D) provides that:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence report thereafter made available to the Bureau of Prisons.

Puma contends that the trial court's failure to make written findings rejecting Puma's challenges to the pre-sentence report, is reversible error. This contention is meritless. The trial court's express rejection of Puma's challenges to the pre-sentence report appears in the record. This oral finding satisfies 32(c)(3)(D)'s requirement that the trial court "make a finding as to the allegation" raised by Puma. *United States v. Burch*, 873 F.2d 765, 768 (5th Cir.1989); *United States v. Lawal*, 810 F.2d 491, 493 n. 2 (5th Cir.1987). Puma's

only objection must be that this ruling was not attached in writing to the pre-sentence report that was sent to the Bureau of Prisons. If so, the record does not show any prejudice for any such omission.

### 2. Accuracy of Information on which Sentence was Based

Puma's second contention, that his sentence was based on inaccurate information, is similarly meritless. The trial court expressly considered and rejected Puma's objections to the pre-sentence report. Puma alleges only one specific example of reliance on erroneous facts. He argues that the trial court should not have relied on the pre-sentence report because the report refers to acts committed before the charged conduct. A sentencing court, however, may consider for sentencing purposes facts that were not alleged in the indictment. *United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir.1989). The trial court in this case was well within its discretion in making the factual findings challenged by Puma.

### 3. Disparity in Sentences Received by Different Defendants

Puma's third objection to his sentence, raised by Nichols and Dodd as well, is that the disparity between his sentence and the sentence of his co-conspirator Payne, rendered his sentence defective under the "spirit" of the Sentencing Guidelines. Puma's, Dodd's, and Nichols' own sentences fall within the range recommended by the Sentencing Guidelines. The fact that another party received a lower sentence than Puma does not alone make Puma's otherwise legal sentence a violation of the Sentencing Guidelines. *United States v. Pierce*, 893 F.2d 669, 678 (5th Cir.1990).

### 4. Propriety of Forfeiture

Finally, Puma raises three objections to the forfeiture of property ordered by the trial court. First, he argues that the indictment failed to advise him of the precise extent of the forfeiture sought by the government, in violation of both Fed.R.

Crim.P. 7(c)(2) and Fed.R.Crim.P. 31(e). Second, he argues that the jury's special verdict regarding the "Diamond Oaks Motor Company" inadequately specified the property that had been forfeited, in violation of Fed.R.Crim.P. 31(e). Third, Puma objects that there was insufficient evidence to support the forfeiture of certain automobiles listed in the amended order of forfeiture granted to the government by the trial court.

### a. Sufficiency of Indictment under Rule 31(e) and 7(c)(2)

Puma did not raise with the district court his present objection to the indictment's specification of property subject to forfeiture. We therefore ask only whether the indictment states the essential elements of an offense. Fed.R.Crim.P. 12(b)(2). As we noted in *United States v. Cauble*, 706 F.2d 1322, 1347 (5th Cir.1983) (en banc), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984), "[t]he purpose of the notice of forfeiture in the indictment is to inform the defendant that the government seeks forfeiture as a remedy." The designation of property subject to forfeiture is sufficiently specific if it "puts the defendant on notice that the government seeks forfeiture and identifies the assets with sufficient specificity to permit the defendant to marshal evidence in their defense." *Id.*

In this case, count 2 of the indictment states that the government sought forfeiture of the "Diamond Oaks Motor Company, 4249 Denton Highway, Haltom City, Texas" and "$5,030.00 in U.S. currency." This description of Puma's car lot business is amply sufficient to notify Puma that the government sought forfeiture of all of the company's assets. *Cauble*, 706 F.2d at 1347; *United States v. Boffa*, 688 F.2d 919, 939 (3d Cir.1982) ("by alleging that all of the appellants' interest in the enumerated corporations was subject to forfeiture, the indictment alleged the 'extent of the interest or property subject to forfeiture'" required by Rule 7(c)(2)), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983). Moreover, count 3 of the indict-

ment alleges precisely how the government intended to link the Diamond Oaks Motor Company both to money-laundering and to the proceeds of unlawful activity.

The indictment as a whole described the property and how it was illegally used. This was more than sufficient to allow Puma to marshall any defense. *United States v. Peacock*, 654 F.2d 339, 351 (5th Cir.1981) (specificity of forfeited property's description in indictment should be judged from indictment as whole), *modified*, 686 F.2d 356 (5th Cir.) (per curiam), *cert. denied*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1982). It therefore violated neither Fed.R.Crim.P. 7(c)(2) nor Fed.R. Crim.P. 31(e).

#### b. Sufficiency of Special Verdict of Forfeiture Under Rule 31(e)

■ We also reject Puma's challenge to the jury's special verdict. The jury found that the "Diamond Oaks Motor Company" had been used to control, and had been purchased by the proceeds of, a continuing criminal conspiracy. This finding identifies with sufficient specificity the asset subject to forfeiture. The jury is under no obligation "to select only certain of that entities' assets for forfeiture....", *Cauble*, 706 F.2d at 1349. *See also United States v. Tunnell*, 667 F.2d 1182, 1188 (5th Cir. 1982) (jury's special verdict need not identify which rooms of hotel were used in criminal enterprise for whole hotel to be forfeited). If *any* part of the motor company was purchased by, or used to control, the proceeds of a continuing criminal conspiracy, then it is "readily apparent that the entire property was subject to forfeiture", *United States v. Possick*, 849 F.2d 332, 341 (8th Cir.1988). The jury's special verdict, therefore, complied with Fed.R. Crim.P. 31(e)'s requirement that the verdict identify "the extent of the interest or property subject to forfeiture."

#### c. Sufficiency of Evidence for Forfeiture of Property Listed in Order of Forfeiture

■ Puma's last contention is that there was insufficient evidence to support the order of forfeiture of numerous automobiles and equipment. Puma argues that there was evidence that "the vehicles were legitimately and legally bought" without involvement of the proceeds of a criminal enterprise; they should not be forfeited because they do "not fall[ ] within the special verdict forfeiting 'Diamond Oaks Motor Company'."

There was ample evidence presented to the jury that the Diamond Oaks Motor Company was both derived from the proceeds of a criminal enterprise and afforded Puma control over a criminal enterprise. This evidence included physical evidence and testimony that the business was used to store amphetamine; testimony that the business was intended by Puma to be a front for amphetamine trafficking; and evidence that Puma's legitimate income was not large enough to cover the cost of purchasing the business.

Puma seems to be arguing that individual items belonging to the company were not involved in a criminal enterprise and that, therefore, those assets should not be forfeited. This is not the law. If the motor company was forfeitable, then all the individual assets of the company were also forfeitable, without any proof that each individual asset had been used in, or purchased by the proceeds of, a criminal enterprise. *Cauble*, 706 F.2d at 1349. *See also Tunnell*, 667 F.2d at 1188 (jury's special verdict need not identify which rooms of hotel were used in criminal enterprise for whole hotel to be forfeit); *Possick*, 849 F.2d at 341.

### III.

Dodd raises two points of error on appeal. His contention that his conviction violated the Ex Post Facto clause lacks merit. We also affirm the trial court's denial of his motion to suppress evidence.

### A. Ex Post Facto Claim

■ Dodd claims that his conviction for conspiracy beginning before the enactment of the Sentencing Guidelines violated the Ex Post Facto clause of the U.S. constitution, because his participation in the con-

spiracy "[was] not specifically shown to have continued past November 1, 1987." Dodd, however, does not argue here that he withdrew from the conspiracy by taking "affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach other conspirators." *United States v. U.S. Gypsum Co.,* 438 U.S. 422, 464–65, 98 S.Ct. 2864, 2887–88, 57 L.Ed.2d 854 (1978); *see also United States v. Jimenez,* 622 F.2d 753, 757 (5th Cir.1980). There is no violation of the Ex Post Facto clause in the application of the Sentencing Guidelines to conspiracies that begin before the enactment of the Guidelines but continue after the Guidelines' enactment. *White,* 869 F.2d at 826.

B. Probable Cause for Search Warrant

■ Dodd also contends that the Drug Enforcement Agency's search of Dodd's property pursuant to a warrant violated the Fourth Amendment, because the warrant rested on stale evidence. We need not address probable cause for the warrant, because we find that the Drug Enforcement Agency officers acted in good faith in relying on the issued warrant. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *United States v. Craig,* 861 F.2d 818, 821 (5th Cir.1988).

■ Where an officer's reliance on a warrant is objectively reasonable, evidence obtained under the warrant is not excluded. Such reliance is objectively reasonable unless the affidavit supporting the warrant is so lacking in indicia of probable cause as to render belief in its existence unreasonable. *Craig,* 861 F.2d at 821.

The record here shows a substantial basis for the conclusion that the officials acted in good faith in relying on the warrant. The warrant was issued on December 2, 1989, on the basis of an affidavit by DEA agent Lonnie Watson. Watson stated in the affidavit that he had been informed by Dodd's co-conspirator Payne that Dodd had supplied Payne with "multi-pound quantities" of amphetamine during 1986 and 1987. Watson also stated in his affidavit that Storey, another of Dodd's co-conspira-

tors, had informed him that Storey and Dodd produced five pounds of amphetamine per week from March, 1987 until June of 1988, at Dodd's property. Storey also informed Watson that Dodd had constructed an underground cave on Dodd's property for producing amphetamine and that Dodd and Storey had discarded numerous pieces of broken laboratory glassware and chemical containers at a dumpsite on Dodd's property. Watson stated further in the affidavit that, as late as September 28, 1989, a narcotics officer informed Watson that he had searched a trailer registered to Dodd and had found drug manufacturing paraphernalia in the trailer. Watson, an agent for the DEA of fourteen years' experience, stated that residue of amphetamine and precursor chemicals do not deteriorate even if buried or submerged in water over a period of years.

In short, there was evidence in the affidavit that Dodd's property had been continuously used for the production of amphetamine from March, 1988 until September 1989, four months before the warrant was issued. The affidavit indicated a long-standing pattern of illegal activity that produced physical remnants such as chemicals, broken glass, and an underground lab; these remnants were likely to persist even after the events described by Watson's informants had ended. These circumstances indicate that Watson's belief in the validity of the warrant was objective and reasonable, despite the gap in time between the occurrence of the events in the affidavit and the issuance of the warrant. *United States v. Webster,* 734 F.2d 1048, 1056 (5th Cir.), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984) (where information in affidavit alleges long-standing, ongoing criminal act, officer's reliance on warrant issued on basis of affidavit is good-faith reliance); *Craig,* 861 F.2d at 822 (where evidence sought under warrant is likely to persist, interval between facts described in affidavit and issuance of warrant is not fatal to finding of good faith reliance on warrant by officer). Resolving as we must all issues of credibility in favor of the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942),

we find that there was a substantial basis in the record for the conclusion that the officers acted in good faith in relying on the warrant. We therefore affirm the trial court's rejection of Dodd's motion to suppress the fruits of the DEA officers' search.

### IV.

Nichols raises two new points on appeal. First, he argues that there is insufficient evidence to support his conviction for conspiracy. We reject this argument. Second, Nichols argues that the trial court, in sentencing Nichols, erred in attributing to him possession of the entire amount of amphetamine distributed by the conspiracy. We hold that this contention has merit; we therefore vacate Nichols' sentence and remand his case to the trial court for re-sentencing.

### A. Sufficiency of Evidence

 Nichols argues that the trial court erred in rejecting his motion for a judgment of acquittal. Nichols did not renew his motion after introducing evidence in his defense. Nichols also rested and closed without renewing his motion after the government rested and closed. When a defendant does not renew a motion for acquittal at the conclusion of all the evidence, appellate review is limited to ascertaining whether there was a "manifest miscarriage of justice." Fed.R.Crim.P. 29(a); *United States v. Osgood*, 794 F.2d 1087, 1093 (5th Cir.), *cert. denied*, 479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986). If a reasonable trier of fact could have found that Nichols conspired to distribute and produce amphetamines, then we must affirm the trial court's rejection of Nichols' motion for acquittal. *United States v. Freeze*, 707 F.2d 132, 135 (5th Cir.1983).

We cannot say there was no reasonable basis for the jury's decision in this case. The government had to establish that Nichols knowingly and voluntarily joined in an agreement to commit a crime and that he committed an overt act. *United States v. Ortiz–Loya*, 777 F.2d 973, 981 (5th Cir. 1985). Nichols does not dispute that Payne

was the "hub" of a conspiracy. He argues that he did not knowingly join that conspiracy. At trial, however, there was testimony that Nichols usually purchased amphetamine from Ratheal whenever Ratheal purchased the drug from Payne. There was also testimony that Nichols re-sold the drug, that Nichols assisted the Ratheals in transporting the drug, and that Nichols knew that Payne was the Ratheals' supplier. This testimony, if believed, would be sufficient to establish that Nichols was a "link" in the distribution chain of the Payne conspiracy. From Nichols' knowledge that Payne was the Ratheals' supplier, a jury could infer that Nichols knew of the conspiracy. A jury could also infer from Nichols' purchase and resale of amphetamine that he voluntarily participated in and profited from the conspiracy to distribute amphetamine. *United States v. Gonzales*, 866 F.2d 781, 787 (5th Cir.), *cert. denied*, 490 U.S. 1093, 109 S.Ct. 2438, 104 L.Ed.2d 994 (1989). We therefore affirm the trial court's rejection of Nichols' motion for acquittal.

### B. Attribution of Quantity of Drugs under Sentencing Guidelines

 Initially, Nichols' pre-sentence report stated that Nichols possessed two pounds of amphetamine with the intent to distribute. The government objected to the pre-sentence report, and an amended report was filed, crediting Nichols with possession of over 390 pounds of amphetamine, the entire amount of the drug attributed to the conspiracy. The trial court gave no reason for attributing to Nichols amphetamine possessed by other members of the conspiracy other than the fact that Nichols was a co-conspirator.

The sentencing guideline pertaining to conspiracy, § 2D1.4, comment 1, allows conspirators to be sentenced "on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy *that was known to the defendant or was reasonably foreseeable.*" USSG, § 2D1.4 Comment (emphasis added). In order to attribute to a particular defendant amounts of a controlled substance

that was the subject of a conspiracy, the sentencing court must determine the quantity of controlled substance that the defendant knew or should reasonably have foreseen the conspiracy would have involved.

The reasonable foreseeability required of § 2D1.4 requires a finding separate from a finding that the defendant was a conspirator. *United States v. Warters*, 885 F.2d 1266, 1273 (5th Cir.1989). In *Warters*, this court vacated the sentence for misprision of conspiracy to traffic in marijuana for express findings of the amount of marijuana attributable to the defendant. *Warters*, 885 F.2d at 1272. This court noted that the entire amount of marijuana involved in the conspiracy was not automatically attributable to the defendant. Rather, the trial court would "need to expressly determine not only the actual amount involved in the entire conspiracy ... but also the amount ... which the defendant knew or should have known or foreseen was involved." *Id.* at 1273.

The district court here should have expressly found the quantity of amphetamine that Nichols ought reasonably to have foreseen was involved in the conspiracy. It does not necessarily follow from the fact that Nichols was convicted of conspiracy that he could have reasonably foreseen the total quantity involved in the conspiracy: the acts of co-conspirators may be unforeseeable. *See Pinkerton v. United States*, 328 U.S. 640, 647–48, 66 S.Ct. 1180, 1184–85, 90 L.Ed. 1489 (1946). Reasonable foreseeability is mentioned in the comment to § 2D1.4 as an addition to an act's being in furtherance of a conspiracy. The government's argument that reasonable foreseeability follows automatically from membership in a conspiracy leaves the second clause of the comment without meaning.

We express no opinion regarding the evidence of the quantity Nichols could have reasonably foreseen that the conspiracy would involve. We state only that proof of reasonable foreseeability does not follow automatically from proof that Nichols was a member of the conspiracy.

We AFFIRM in all respects except we VACATE Nichols' sentence. We RE-

MAND Nichols' case only for additional fact finding and re-sentencing.