UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No.  92-2516

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

LINDA RUIZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas, Houston Division
(CR-H-91-146-S)

(January 23, 1995)

Before KING and BENAVIDES, Circuit Judges, and LAKE,[*] District
Judge.

**SIM LAKE, District Judge:**

Linda Ruiz appeals the 10-year statutory minimum sentence the
district court imposed pursuant to 21 U.S.C. § 841(b)(1)(B)(i).  We
**AFFIRM**.

Ruiz was one of a number of defendants charged in a multiple-
count indictment.  Count Two charged her with conspiracy to possess
with  intent  to  distribute  heroin  from October 1, 1989, through

_____

[*] District Judge, Southern District of Texas, sitting by
designation.

September 6, 1991, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The government filed an Information of Prior Convictions pursuant to 21 U.S.C. § 851(a)(1) notifying Ruiz that she was subject to an enhanced penalty because of a prior state felony conviction for possession of a controlled substance. Ruiz pleaded guilty to Count Two in return for the government's agreement to dismiss the remaining counts against her. In her plea agreement Ruiz acknowledged that the penalty for Count Two was 10 years to life in prison.

Ruiz was a member of a large heroin distribution conspiracy operating in Bryan, Texas. The leader of the conspiracy was Reynaldo Cantu-Castro ("Castro"). Ruiz was a heroin user who required three or four "hits" a day. During the almost two-year term of the conspiracy Ruiz was not lawfully employed. She supported her heroin addiction by trading sex and stolen merchandise to Castro for heroin and by acting as an intermediary between other members of the conspiracy and heroin buyers.[1]

The PSR recited that on August 21, 1990, a Texas Department of Public Safety investigator, acting undercover, met Ruiz for the purpose of buying cocaine. Ruiz contacted her supplier and told the agent that a cocaine purchase could be made later that day. When Ruiz explained to the agent that she had not purchased cocaine lately, but had been buying and using heroin, the agent asked Ruiz if she could obtain heroin for him. Ruiz told the agent that she could do so "with ease" and told the agent the price and place of delivery. The agent asked Ruiz to purchase three "papers" of

---

[1] Presentence Report ("PSR") at ¶¶ 78 and 81.

heroin for him, and she agreed to do so. Ruiz then contacted Ernesto Escomilla, who worked as a runner for Castro, and Ruiz acted as an intermediary in the sale of .26 gram of heroin to the agent.[2] On September 10, 1990, the same agent again contacted Ruiz to buy heroin. Ruiz told the agent that heroin purchases would be no problem because there was "a lot" of heroin in the Bryan area. Ruiz quoted a price, and again acting as an intermediary between the agent and Escomilla, Ruiz sold the agent five papers of heroin weighing .37 gram. During this meeting she also offered to sell cocaine to the agent.[3]

The PSR concluded that "[c]onsidering relevant conduct issues associated with Linda Ruiz," she was "directly linked" to the distribution of .632 gram heroin on the two dates she sold it to the undercover agent.[4] Her base offense level under guideline § 2D1.1 was calculated at 12.[5] After crediting Ruiz for acceptance of responsibility the PSR calculated her total offense level at 10.[6] Given her criminal history category of IV the PSR concluded that Ruiz's guideline range was 15 to 21 months. Although the PSR reported that other members of the conspiracy sold well in excess

---

[2] PSR at ¶¶ 24 and 25.

[3] PSR at ¶¶ 29 and 30.

[4] PSR at ¶ 83.

[5] Section 2D1.1 provides for a base offense level of 12 only when the quantity of heroin involved in an offense is less than 5 grams.

[6] PSR at ¶¶ 83 and 90.

of 100 grams of heroin,[7] it neither mentioned guideline § 1B1.3 -- which allows an upward adjustment to a defendant's offense level based on conduct "for which the defendant would otherwise be accountable" -- nor contained any discussion of whether Ruiz's offense level should be increased due to the conduct of co-conspirators. After describing the conspiracy and Ruiz's conduct, the PSR merely concluded that "pursuant to statutory requirements, the guideline imprisonment range becomes the mandatory minimum sentence of 10 years."[8]

Although Ruiz filed an objection to a statement in the PSR that related to her criminal history score, she did not object to any other factual information in the PSR or to the PSR's conclusion that the 10-year statutory minimum applied. At the June 19, 1992, sentencing hearing Ruiz acknowledged that a 10-year minimum applied. Without making separate findings regarding either the amount of heroin involved in the conspiracy or the amount of heroin attributable to Ruiz, the court adopted the PSR, sentenced Ruiz to 10 years in prison followed by 8 years of supervised release, and ordered her to pay a $50.00 special assessment. Ruiz now argues that the district court erred in imposing a 10-year sentence, erred in failing to make a specific finding regarding the amount of heroin for which she was responsible, and erred in failing to satisfy itself at the rearraignment that her plea was accurate with

---

[7] E.g., PSR at ¶¶ 28, 37, 40, 45, 47, 53, and 56.

[8] PSR at ¶ 100.

c:\wp50\files\m&o\92-2516.opn          -4-

respect to the amount of heroin for which she would be held responsible at sentencing.

Since Ruiz failed to object to either the PSR or the district court's sentence (and in fact agreed that the 10-year statutory minimum applied), the scope of our review is severely limited; we will not reverse unless we find plain error. Crim. R. Fed. P. 52(b); United States v. Calverley, 37 F.3d 160 (5th Cir. 1994) (en banc). See also United States v. Rodriquez, 15 F.3d 408, 414-415 (5th Cir. 1994). We recently articulated the elements of the plain error standard and explained why it is so rigorous:

> One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result in its forfeiture. "This practice is founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact." In exceptional circumstances, appellate courts may, in the interests of justice, notice errors to which no objection has been made. Such circumstances are sharply circumscribed by the plain error standard requiring that unobjected-to errors be "plain" and "affect substantial rights." Assuming that these requirements are met, appellate courts possess the discretion to decline to correct errors which do not "seriously affect the fairness, integrity, or public reputation of judicial proceedings."

Calverley, 37 F.3d at 162, quoting United States v. Atkinson, 297 U.S. 157, 159, 56 S.Ct. 391, 392 (1936), and United States v. Olano, 113 S.Ct. 1770, 1776 (1993) (footnotes omitted).

Our first task under this standard is to determine whether the district court committed an error in sentencing Ruiz to 10 years imprisonment. The starting place in our analysis is the statutory scheme under which Ruiz was convicted and sentenced. 21 U.S.C.

§ 846 provides that a person who "conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy." The object of the conspiracy for which Ruiz was convicted was possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a). 21 U.S.C. § 841(b) states in pertinent part:

> (b) Except as otherwise provided . . . any person who violates subsection (a) of this section shall be sentenced as follows:
>
> . . .
>
> (1)(B) In the case of a violation of subsection (a) of this section <u>involving</u> --
>
> > (i) 100 grams or more of a mixture or substance containing a detectable amount of heroin:
> >
> > . . .
>
> such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years. . . . If any person commits such a violation after one or more prior convictions for [a state or federal felony drug offense], such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment . . . (emphasis added)

For cases involving less than 100 grams of heroin, subsection (1)(C) prescribes a maximum sentence of 30 years with no mandatory minimum sentence for defendants who, like Ruiz, have one or more prior felony drug convictions.

Ruiz argues that the district court erred in imposing a 10-year sentence because the facts do not support a finding that her offense involved at least 100 grams of heroin. The quantity of drugs involved in a conspiracy offense is not an element of the

offense, it is a fact to be found by the sentencing court from a preponderance of the evidence.  United States v. Watch, 7 F.3d 422, 426-27 (5th Cir. 1993).  In making this fact determination the district court may rely on the information presented in the PSR unless the defendant demonstrates that it is materially untrue.  United States v. Vela, 927 F.2d 197, 201 (5th Cir.), cert. denied, 112 S.Ct. 214 (1991).  Although the PSR did not specifically state that Ruiz's offense involved 100 grams or more of heroin, it nevertheless contained factual information that supported imposition of the 10-year sentence.

The PSR informed Ruiz and the district court that Ruiz had been "directly linked" to the distribution of .632 gram of heroin.[9] It also detailed sales by co-conspirators of substantially more than 100 grams of heroin, explained Ruiz's personal involvement in two sales, described her exchange of sex and stolen merchandise for heroin on other occasions, and recited Ruiz's statements to the undercover officer that she could obtain heroin "with ease" and that heroin purchases would be no problem because there was "a lot" of heroin in the Bryan area.  Presented with these facts, with the

---

[9] Neither the PSR nor the parties in their briefing have connected the term "directly linked" to any provision of the Sentencing Guidelines.  Our research satisfies us that it is not a precise term but instead is a shorthand term meaning the amount of drugs attributable to a defendant's own conduct.  In United States v. Ponce, 917 F.2d 841, 844 (5th Cir. 1990), cert. denied, 499 U.S. 940, 111 S.Ct. 1398 (1991), we employed the term in this manner. In describing the factual background of the case, we stated that "[t]he sentencing court included not only the quantities of cocaine directly linked to Ponce in its calculation of his base offense level, but also . . . those quantities of cocaine attributable to transactions involving his alleged co-conspirators" (emphasis added).

probation officer's conclusion that the statutory 10-year minimum sentence applied, and with no objection from Ruiz, the district court had a sufficient basis for concluding both that Ruiz's offense involved at least 100 grams of heroin and that the 10-year statutory minimum should properly be applied to her.

Moreover, even assuming that the facts in the PSR did not support the conclusion that Ruiz's offense involved at least 100 grams of heroin and that the statutory minimum therefore applied, the district court could still have sentenced Ruiz to 10 years in prison.  Had the court found that Ruiz's offense involved only the .632 gram of heroin that she personally delivered to the undercover officer, Ruiz would have been sentenced under § 841(b)(1)(C).  This statute provides a maximum sentence of 30 years for defendants who, like Ruiz, have at least one prior felony drug conviction.  Because the 10-year sentence imposed by the district court is well below the maximum sentence to which Ruiz would otherwise have been subject, the district court did not plainly err in sentencing her to 10 years imprisonment.  United States v. Brunson, 915 F.2d 942, 944 (5th Cir. 1990)(holding that where district court failed to articulate reasons for upward departure from guideline range but could, upon remand, reinstate the same sentence because it fell below statutory maximum, no miscarriage of justice amounting to plain error had occurred).

Ruiz's second argument, that the district court erred in failing to make a specific finding as to the amount of heroin attributable to her, presents a closer question.  Fed. R. Crim. P.

32(c)(3)(D) requires district courts to make specific findings as to all "controverted matters" in a PSR.[10] In addition, our decisions addressing relevant conduct of co-conspirators under guideline § 1B1.3 impose an independent obligation on district courts to make findings as to the quantity of drugs in the conspiracy that was reasonably foreseeable to the defendant being sentenced. United States v. Foy, 28 F.3d 464, 476-77 (5th Cir.), cert. denied, 115 S.Ct. 610 (1994); United States v. Puig-Infante, 19 F.3d 929, 942 (5th Cir.), cert. denied, 115 S.Ct. 180 (1994); United States v. Carreon, 11 F.3d 1225, 1233-1235 (5th Cir. 1994). See also United States v. Smith, 13 F.3d 860, 866-868 (5th Cir.), cert. denied, 114 S.Ct. 2151 (1994). At the time of Ruiz's sentencing § 1B1.3(a)(1) made a defendant responsible for all acts "for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction . . . or that otherwise were in furtherance of" the offense. Application Note 1 to this section stated in relevant part:

> . . . In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant. Because a count may be broadly worded and include the conduct of many participants over a substantial

___

[10] Rule 32(c)(3)(D) states: If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.

period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant. Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably fore-seeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline.[11]

For defendants who, like Ruiz, were sentenced under the 1991 guidelines, we explained that

reasonable foreseeability does not follow automatically from proof that [the defendant] was a member of the con-spiracy. The reasonable foreseeability required [under the guidelines] requires a finding separate from a find-ing that the defendant was a conspirator. Thus, for a sentencing court to attribute to a defendant a certain quantity of drugs, the court must make two separate

_____

[11] Unless otherwise noted all citations are to the 1991 Guidelines Manual in effect from November 1, 1991, through October 31, 1992. This version of the guidelines applies to Ruiz since she was sentenced on June 19, 1992. See United States v. Ainsworth, 932 F.2d 358, 362 (5th Cir.), cert. denied, 112 S.Ct. 346 (1991)(guideline provisions in effect at the time of sentencing dictates which version of the guidelines to apply). Effective November 1, 1992, § 1B1.3(a)(1) was amended to incorporate the reasonable foreseeability test previously articulated in Applica-tion Note 1 for determining relevant conduct in the case of jointly undertaken criminal activity. Application Note 2 was simultane-ously amended to provide "that a defendant is accountable for the conduct (acts or omissions) of others that was both:

    (i)  in furtherance of the jointly undertaken criminal activity; and

    (ii) reasonably foreseeable in connection with that activity."

We have interpreted these amendments to require the district court to find not only the amount of drugs that the defendant could have reasonably foreseen, but also the scope of the conspiracy to which the defendant agreed. E.g., Smith, 13 F.3d at 866-868. For an exhaustive history and analysis of the development of relevant conduct under § 1B1.3 see Carreon, 11 F.3d at 1232-1235.

findings: (1) the quantity of drugs in the entire con-
spiracy, and (2) the amount which each defendant knew or
should have known was involved in the conspiracy.

Puig-Infante, 19 F.3d at 942 (citations omitted).

The question presented by Ruiz's second argument is whether the district court's failure to make such findings was plain error under either Rule 32 or our precedent. "Deviation from a legal rule is 'error' unless the rule has been waived." Olano, 113 S.Ct. at 1777. Rule 32(c)(3)(D) only requires findings as to contro-verted matters. After Ruiz's rearraignment the district court entered an Order for PSI, Disclosure Date, and Setting Sentence.[12] The order required that the PSR be made available to defense counsel when it was completed and required defense counsel and counsel for the government to file by March 9, 1992, either a statement of no objection or "[o]bjections in writing to the facts of the offense and application of the sentencing guidelines."[13]

---

[12] Record (R.) 109.

[13] At all times relevant to this case Southern District Local Rule 17, "Guideline Sentencing" underscored this requirement. It provided:

D.   Objections.

   1.   Within 10 days after disclosure of the initial report, counsel shall have delivered objections to the report in writing to the probation office.

   2.   Objections include alteration of the facts of the offense, application of the sentencing guidelines, and interpretation of them. A party not objecting must deliver a statement of non-objection to the probation office.

. . .

(continued...)

Ruiz only filed a written objection to one fact used to calculate her criminal history score.[14]   At sentencing she voiced no objections to any aspect of the PSR or to the sentence imposed by the court.  Because Ruiz never contested any of the information in the PSR dealing with her role in the conspiracy, the amount of drugs involved in the conspiracy, or the probation officer's conclusion that the 10-year statutory minimum applied, these were not controverted matters that required findings under Rule 32(c)(3)(D).

---

[13](...continued)
E.    Final Report.

   1.    After the time for objections, the probation office shall promptly investigate and revise the initial report, as required.  The probation office may require counsel to meet the officer to discuss disputed factual and legal issues.

   2.    Within 12 days after the time for objections, the probation office shall submit to the sentencing judge the final report, with an addendum of unresolved objections and the officer's comments on them.  The final report shall contain a certificate that it has been disclosed to all counsel and that a copy has been filed under seal with the district clerk.

                    . . .

   G.    Effect.  Except for objections in the addendum, the court may accept the final report as accurate. Absent a clear demonstration of good cause, no party shall be allowed at the time of sentencing to present other objections. . . .  (emphasis added)

   [14] R. 120.  In a supplemental addendum to the PSR the probation officer concurred with Ruiz's objection and reduced her criminal history score from 8 to 7.

We further conclude that under these facts Ruiz waived her right to complain of the failure of the district court to comply with our precedent requiring findings as to her relevant conduct in the conspiracy.  <u>United States v. Garcia-Pillado</u>, 898 F.2d 36, 39-40 (5th Cir. 1990)(holding that government waived right to challenge alleged error of district court in failing to impose statutory minimum sentence under § 841(b)(1)(B) by failing to object to sentence announced by district court); <u>United States v. Plisek</u>, 657 F.2d 920, 925 (7th Cir. 1981)(holding that defendant "waived any objection to the accuracy of the [presentence] report" by failing to object after having been given ample opportunity to do so).

Our research has turned up only one reported decision in which we held that a district court erred in failing to make sentencing findings in the absence of an objection by the defendant.  In <u>United States v. Puma</u>, 937 F.2d 151, 159-160 (5th Cir. 1991), <u>cert. denied</u>, 112 S.Ct. 1165 (1992), the court reversed a sentence and remanded for additional findings of fact in light of an argument raised for the first time on appeal without ever referring to the appropriate standard of appellate review.  The only authority the court cited for its ruling, <u>United States v. Warters</u>, 885 F.2d 1266 (5th Cir. 1989), was a case in which the district court failed to make sentencing findings after an objection to the PSR by the defendant.  In cases other than <u>Puma</u> we have consistently held that the failure of the district court to make findings was not error in the absence of a timely objection by the defendant.  <u>E.g.</u>, <u>United</u>

States v. Lopez, 923 F.2d 47, 50 (5th Cir.), cert. denied, 500 U.S. 924, 111 S.Ct. 2032 (1991); United States v. Sparks, 2 F.3d 574, 589 (5th Cir. 1993), cert. denied, 114 S.Ct. 899 (1994); United States v. McCaskey, 9 F.3d 368, 375-76 (5th Cir. 1993), cert. denied, 114 S.Ct. 1565 (1994).[15]  We believe these holdings made before and after Puma correctly state the law binding on this panel and applicable in this circuit.

Moreover, even were we inclined to conclude that the district court's failure to make findings as to Ruiz's relevant conduct was error under our precedent, we conclude that it was not plain error. For an error to be "plain" it must be "clear" or "obvious." Olano, 113 S.Ct. at 1777.  As we explained in Calverley, to be "plain" an error must be "so conspicuous that 'the trial judge and prosecutor were derelict in countenancing [it], even absent the defendant's timely assistance in detecting [it].'"  37 F.3d at 163, quoting United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592 (1982).  Assuming that Puma created uncertainty as to the district court's obligation to make sentencing findings absent an objection, such uncertainty demonstrates that any error by the district court

---

[15] The absence of a finding by the sentencing court of the amount of drugs reasonably foreseeable to a defendant is not always reversible error even if the defendant objects to the amount of drugs attributable to him in the PSR.  In Sparks, 2 F.3d at 588-589, we held that to vacate and remand for resentencing would be "a hollow act" and a waste of judicial resources because the record contained substantial evidence that the defendant knew, or should have reasonably foreseen, the amount of drugs distributed by the conspiracy.  Under the facts of this case we likewise conclude there was sufficient information in the PSR for the district court to have concluded that it was reasonably foreseeable to Ruiz that the conspiracy of which she was a part involved the possession with intent to distribute more than 100 grams of heroin.

in failing to make sentencing findings in this case was not plain. <u>Calverley</u>, 37 F.3d at 165.

Furthermore, although we have required district courts to make separate findings as to a defendant's relevant conduct in a drug conspiracy before increasing a defendant's guideline offense level for the conduct of co-conspirators, we have not yet held that the standards for determining the guideline range must also be used for determining the applicability of a statutory minimum sentence. We have recognized, however, that the other circuit courts that have decided this issue have all held that the standards for determining the amount of drugs involved in conspiracy cases for purposes of applying the guidelines must also be used for purposes of applying the statutory minimums prescribed by 21 U.S.C. § 841(b). <u>See</u> <u>United States v. Madkins</u>, 14 F.3d 277, 279 (5th Cir. 1994). Today we join the other circuits that have decided this question[16] and hold that the standards for determining the quantity of drugs involved in a conspiracy for guideline sentencing purposes apply in determining whether to impose the statutory minimums prescribed in § 841(b). Since we only decide this question today, the district court did not plainly err by failing to make such findings in this case.

---

[16] <u>See</u> <u>United States v. Irvin</u>, 2 F.3d 72 (4th Cir. 1993), <u>cert.</u> <u>denied</u>, 114 S.Ct. 1086 (1994)(explaining the similarity between the principles incorporated in § 1B1.3 and the rule announced in <u>Pinkerton v. United States</u>, 328 U.S. 640, 66 S.Ct. 1180 (1946), that conspirators are guilty of reasonably foreseen acts of co-conspirators done in furtherance of a conspiracy); <u>United States v.</u> <u>Young</u>, 997 F.2d 1204 (7th Cir. 1993); <u>United States v. Martinez</u>, 987 F.2d 920 (2d Cir. 1993); <u>United States v. Jones</u>, 965 F.2d 1507 (8th Cir.), <u>cert.</u> <u>denied</u>, 113 S.Ct. 346 (1992).

Ruiz's last argument is that the district court erred in failing to satisfy itself at the rearraignment that Ruiz's plea was accurate with respect to the amount of heroin involved. Ruiz argues that Fed. R. Crim. P. 11 requires a district court determining whether to accept a guilty plea in a drug conspiracy to satisfy itself that there is a factual basis not only for the plea of guilty but also for any relevant conduct that would warrant an enhanced punishment. We reject this argument.

During Ruiz's rearraignment the district court informed her of the elements of the conspiracy offense charged in Count Two and informed her that the offense to which she was pleading guilty "carries a minimum sentence of 10 years."[17] Ruiz acknowledged -- both in her oral statements to the district judge and in her written plea agreement -- that the penalty range for the offense to which she was pleading guilty was 10 years to life in prison. After Ruiz admitted to twice delivering heroin to an undercover agent, the district court determined that there was an adequate factual basis for her guilty plea. The amount of drugs involved in a conspiracy is not an element of the offense, but an issue to be resolved by the court at sentencing. E.g., Watch, 7 F.3d at 426-27. Rule 11 did not require the district court to determine whether there was a sufficient factual basis to support imposition of an enhanced, 10-year sentence before accepting Ruiz's guilty plea.

The judgment and sentence of the district court are **AFFIRMED**.

---

[17] Transcript of January 13, 1992, rearraignment at p. 7, Docket Entry No. 684. R. Vol. II.