**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-20557

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROSS HULL, DOUG LASCO, LLOYD KREIN, and JOSEPH STAFFORD,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Texas

_____

November 10, 1998

Before SMITH, DUHÉ, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


The defendants appeal their convictions that resulted from their participation in a fraudulent investment scheme. We affirm.


I.

Ross Hull, Doug Lasco, Lloyd Krein, and Joseph Stafford were charged with a variety of crimes stemming from their activities in connection with a nearly two-year conspiracy that defrauded over one hundred investors of more than $2.3 million. Originally,

Stafford, Krein, and Lasco worked as members of the "John Oliver Group" ("JOG"), which performed legitimate telemarketing services for the purchase and sale of precious metals, effected through JOG's broker, Unimet. In July 1992, Unimet terminated its business relationship with JOG by order of the Federal Trade Commission, leaving JOG without a broker to invest its clients' money.

In turn, JOG pitched, to its clients, the opportunity to trade in ancient coins. Stafford, Krein, and Jim Ammons (a defendant not party to this appeal) masterminded this operation, in which Lasco and Hull worked as salesmen. Of the more than $1.3 million collected from investors, only $255,000 was used to purchase ancient coins; the balance paid JOG's operating expenses and lined the pockets of its principals.

In April 1993, JOG began to offer its clients the opportunity to invest in precious metals again, under the rubric of "Continental Bullion & Coin" ("CBC"), which, however, did not invest any of the more than $400,000 it collected from investors via this scheme.

Also in April 1993, Krein, Stafford, Lasco, and Ronald Keyser (a defendant not party to this appeal) fabricated "ASK Investments" ("ASK"), which pitched the purchase of surplus United States Government equipment that purportedly would be purchased at government auctions and later sold for a guaranteed profit of 10%-100%. ASK attended no such auctions on behalf of its clients and made no such purchases, but reaped over $300,000 from

defrauded investors via this scheme.

When investors attempted to withdraw their money, they encountered a plethora of deceptions. They were told it was a bad time to withdraw or that it would be wiser to "reinvest" their funds. If an investor insisted on withdrawing, he was promised a refund check. Repeated calls for the check resulted in repeated promises that it was forthcoming; for many investors, this continued until the telephone number they had been calling had been disconnected.

## II.

Hull raises the only novel issue of this appeal: whether a defendant who has been acquitted of conspiracy may be held liable as a co-conspirator for sentencing purposes. We conclude that he may.

## A.

Hull was charged with three sets of related counts: count 18 (conspiracy in violation of 18 U.S.C. § 371), counts 19-25 (interstate transportation of stolen property in violation of 18 U.S.C. §§ 2 and 2314), and counts 26-36 (money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(I)). The jury found him guilty on counts 19-25 and not guilty on counts 8 and 26-36. In determining Hull's sentencing level, the court took into account the conduct of his co-defendants, as per U.S.S.G. § 1B1.3 (1995)

(relevant conduct).  Hull argues that the jury's determination that he was not guilty of conspiracy precluded the court from holding him liable for the conduct of his co-defendants for sentencing purposes.

B.

Findings of fact made for sentencing purposes are reviewed under the clearly erroneous standard.  *United States v. Gadison*, 8 F.3d 186, 193 (5th Cir. 1993).  Matters of interpretation of the sentencing guidelines are reviewed *de novo*.  *Id.*  Whether the acts of Hull's co-defendants should be attributable to him is a matter of fact and is reviewed under the clearly erroneous standard.

The scope of relevant conduct attributable to a defendant for sentencing purposes is set out in U.S.S.G. § 1B1.3(a)(1)(B), which states that a defendant is liable for "all reasonably foreseeable acts and omissions of others in furtherance of . . . jointly undertaken criminal activity."  "Jointly undertaken criminal activity" is defined as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy."  *Id.*  Each of these determinations ("reasonable foreseeability," "in furtherance," and the existence of "jointly undertaken criminal activity") is factual and therefore is reviewed under the clearly erroneous standard.

4

A defendant is liable in sentencing for the reasonably foreseeable acts of co-defendants in jointly undertaken criminal activity. *Id.* In cases of fraud, this means a defendant is liable for the total dollar amount that victims were defrauded. *Id.*, illustration (c)(2).

Participation in a conspiracy, however, does not automatically give rise to co-conspirator liability under § 1B1.3(a)(1)(B). Rather, the court also must make particularized findings that the elements of foreseeability and scope of agreement have been met. *United States v. Evbuomwan*, 992 F.2d 70, 72-74 (5th Cir. 1993); *United States v. Puma*, 937 F.2d 151, 160 (5th Cir. 1991). The scope of jointly undertaken criminal activity for which a defendant is held responsible encompasses "the specific conduct and objectives embraced by the defendant's agreement." U.S.S.G. § 1B1.3(a)(1)(B), comment. (n.2).

Ordinarily, Hull's claim would be defeated by the simple fact that the record supports holding him liable for the conduct of his co-defendants. In close association with them, he transported checks he knew had been obtained by fraud. He conned clients into "investing" their money to help further the fraudulent scheme of which he was a part. The court was not clearly erroneous in finding that he was acting "in furtherance" of "jointly undertaken criminal activity" (the scheme), the total losses of which were

"reasonably foreseeability."

Such a determination is complicated, though, by the fact that the jury returned a verdict of not guilty of conspiracy. This arguably undercuts the finding that Hull was engaged in "jointly undertaken criminal activity." For two reasons, however, these apparently contradictory findings are not irreconcilable.

The government must prove all elements of a criminal offense beyond a reasonable doubt. But, findings of fact for sentencing purposes need meet only the lower standard of "preponderance of evidence." U.S.S.G. § 6A1.3, p.s., comment; *United States v. Huskey*, 137 F.3d 283, 291 (5th Cir. 1998). Therefore, a finding that Hull was not guilty of conspiracy for purposes of conviction is not inconsistent with a finding that he was a conspirator for purposes of sentencing.

Once we conclude that the "not guilty" verdict on conspiracy charges did not preclude the court from taking into consideration the acts of co-defendants for sentencing purposes, we need merely to review the decision for clear error. More specifically, we must consider whether the court rationally could have found that, by a preponderance of evidence, Hull acted "in furtherance" of a "jointly undertaken criminal activity" that had "reasonably foreseeability" consequences.

Hull was found beyond a reasonable doubt to have transmitted seven checks, taken by fraud, totaling $76,800 in value, over a

6

two-month period.  Six witnesses testified Hall persuaded them to invest their money in the scheme.  On these facts, the court did not commit clear error in concluding that Hull was indeed part of a criminal enterprise, that he knowingly furthered its ends, and that the total amount by which this scheme defrauded investors (more than $1,500,000) was reasonably foreseeable.

A second ground for affirming is to read § 1B1.3(a)(1)(B) more broadly than the definition of conspiracy in 18 U.S.C. § 371. Support for this comes from the text of the sentencing guidelines.

In setting forth the crime of conspiracy, the statute does not define "conspiracy" but merely criminalizes the act of conspiring against the United States.  § 371.  The guidelines define "jointly undertaken criminal activity" as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others."  § 1B1.3(a)(1)(B).  The fact that the guidelines provided this list, and did not simply reference "conspiracy" as per § 371, suggests that the two concepts may not be identical.  Additionally, the guidelines state that such conduct is attributable to the defendant "whether or not charged as a conspiracy." § 1B1.3(a)(1)(B).  This in turn suggests that the scope of relevant conduct should not depend on whether a particular defendant has been convicted of conspiracy if so charged.

Lastly, the commentary following § 1B1.3 provides still further reason to believe that co-conspirator liability need not be predicated by a conspiracy conviction:  "[T]he scope of criminal

7

activity jointly undertaken by the defendant . . . is not necessarily the same as the scope of the entire conspiracy." U.S.S.G. § 1B1.3, comment. (n.2). A review of the Sentencing Commission's discussion of "Real Offense vs. Charge Offense Sentencing" confirms this. *See* U.S.S.G. ch. 1, pt. A.

While the Commission "initially sought to develop a pure real offense system," whereby sentencing would be determined strictly by the conduct in which the defendant engaged, regardless of the charges against him, the Commission ultimately "moved closer to a charge offense system" whereby sentencing is based "upon the conduct that constitutes the elements of the offense for which the defendant was charged and of which he was convicted." *Id.* The result is a system that "contain[s] a significant number of real offense elements . . . . [The conduct described is] descriptive of general conduct rather than . . . track purely statutory language." *Id.*

This suggests that § 1B1.3(a)(1)(B) does not refer solely to conspiracy to commit the crime, but rather to the general concept of assisting others to achieve some unlawful end. Thus, whether the defendant was charged with, convicted of, or acquitted of conspiracy should not dispositively affect attributable conduct for sentencing purposes as per § 1B1.3(a)(1)(B).

III.

8

The remaining challenges concern merely the application of fact to well-settled law.  We examine and reject these challenges *seriatim*.

A.

Lasco challenges the decision to hold him liable in sentencing for the acts of his co-conspirators, on the ground that he played only a minor role in the conspiracy.  Under the lenient clearly erroneous standard of review, we affirm.

Lasco was charged with and convicted of two counts of conspiracy in violation of § 371, and of interstate transportation of stolen property.  He was involved with the fraudulent activities of his co-conspirators for nearly two years, primarily as a broker or telemarketer.  The presentence report ("PSR") found him responsible for $2,371,450 of the losses suffered by victims of the scheme.  It was not clearly erroneous to hold him liable for the full amount of harm ($2,371,450) inflicted by the conspiracy.

Lasco suggests that the court erroneously held that reasonable foreseeability automatically followed from proof of participation in conspiracy.  He cites to cases standing for the proposition that reasonable foreseeability does not automatically follow from proof of participation in conspiracy.  *E.g., United States v. Puma*, 937 F.2d 151, 160 (5th Cir. 1991).  While Lasco is correct in stating the law, he is incorrect in attacking the sentencing

9

decision on these grounds.

As discussed in part II.B., *supra,* participation in a conspiracy does not automatically give rise to co-conspirator liability under § 1B1.3(a)(1)(B). Rather, the court also must make particularized findings that the elements of foreseeability and scope of agreement have been met. *United States v. Evbuomwan*, 992 F.2d 70, 72-74 (5th Cir. 1993); *United States v. Puma*, 937 F.2d 151, 160 (5th Cir. 1991).

There is sufficient evidence from which the district court could find that all the harms of the conspiracy were foreseeable to Lasco and that his agreement embraced the entirety of the conspiracy. His nearly two years of involvement, in which he worked alongside other "brokers" who peddled the conspiracy's fraudulent pitches, evidences both his notice and acquiescence to the scope of the conspiracy. Furthermore, the PSR specifically held Lasco "responsible for the loss of $324,940 in ASK, $404,769 in the precious metals, and $1,641,741 from the ancient coin program," fulfilling the requirements of particularized findings demanded by *Puma* and *Evbuomwan*. *Id.* Thus, the court did not impermissibly hold that Lasco, being guilty of conspiracy, *a fortiori* was subject to sentencing enhancement as per § 1B1.3(a)(1)(B).

B.

Hull argues that the court erred in ordering him to pay $50,000 in restitution. We review for abuse of discretion. *United States v. Reese*, 998 F.2d 1275, 1280 (5th Cir. 1993).

> An order of restitution will be reversed on appeal only when the defendant shows that it is probable that the court failed to consider a mandatory factor and the failure to consider the mandatory factor influenced the court. The Court's failure to follow the statutory requirements is reviewed for abuse of discretion.

*Id.* at 1280-81 (citations omitted). The mandatory factors consist of "the amount of loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendants and the defendant's dependants, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a).

Hull does not argue that the court failed to consider a mandatory factor (namely, his ability to pay) in ordering restitution, but rather he challenges the court's ultimate determination. Because the PSR covered these requisite factors, and there is no reason to believe that the court intentionally refused to consider any of them, we see no abuse of discretion in ordering $50,000 restitution over three years.

C.

Stafford, Krein, and Lasco contend that the court erred in charging the jury on the issue of deliberate ignorance. The

11

standard of review to be applied in evaluating the propriety of a deliberate ignorance jury instruction is "whether the courts [sic] charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to them. This court has consistently upheld such an instruction as long as sufficient evidence supports its insertion into the charge." *United States v. Fuller*, 974 F.2d 1474, 1482 (5th Cir. 1992) (quotations and citations omitted).

Defendants do not challenge the accuracy of the charge but, rather, challenge the propriety of giving it at all. Whether the evidence is sufficient to justify the giving of a particular charge is a "fact-intensive" question and thus is reviewed under the clearly erroneous standard. *United States v. Lara-Velasquez*, 919 F.2d 946, 952 (5th Cir. 1990).

A deliberate ignorance instruction is justifiable if the record reflects (1) evidence that a defendant lacked knowledge of wrongdoing; (2) highly suspicious circumstances surrounding his activities; and (3) conscious avoidance. *United States v. Stouffer*, 986 F.2d 916, 925 (5th Cir. 1993).[1] The court did not commit clear error in finding that the record satisfied these elements: Stafford, Krein, and Lasco dispute their knowledge of wrongdoing, the circumstances in which they worked were highly

---

[1] *See United States v. Posada-Rios*, No. 94-20645, 1998 U.S. App. LEXIS 27715, at *120-*122 (5th Cir. Oct. 21, 1998).

12

suspicious, and their failure reasonably to question their superiors with regard to these suspicious circumstances constitutes conscious avoidance. *Id.*

## D.

According to Stafford, the court erred in charging the jury on the issue of deliberate ignorance as it relates specifically to money laundering and conspiracy to commit money laundering. Although the argument is an interesting one, we reject it under the plain error standard of review.

Issues raised for the first time on appeal are reviewed only for plain error; an appellant must show (1) the existence of actual error; (2) that the error was plain; and (3) that it affects substantial rights. *United States v. Calverley,* 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc). Because Stafford is unable to surmount the second of these hurdles, his claim is defeated. In explaining "plain error" in *Calverley*, we noted: "Plain is synonymous with "clear" or "obvious," and "[a]t a minimum," contemplates an error which was "clear under current law at the time of trial." *Id.* at 162-63 (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). Because Stafford's theory requires the extension of precedent, any potential error could not have been "plain."

Stafford calls our attention to *United States v. Chen*,

13

913 F.2d 183 (5th Cir. 1990), arguing that we "prohibit[ted] . . . the use of a deliberate ignorance instruction in cases involving specific purposes . . . ." This reading of *Chen* is too broad, for as explained in *United States v. Soto-Silva*, 129 F.3d 340, 344 (5th Cir. 1997), *Chen* prohibits a deliberate jury instruction "if given . . . to an alleged *[21 U.S.C.] section 856(a)(1)* violation." (emphasis added).

Stafford was not charged with violating § 856(a)(1). While the crime with which he was charged contained a purposeful element, similar to that in § 856(a)(1), in *Chen* we held that deliberate ignorance jury instructions can be appropriate in cases involving purposeful crimes other than those arising under § 856(a)(1). *See Chen*, 913 F.2d at 191.

In *United States v. Fierro*, 38 F.3d 761 (5th Cir. 1994), we approved the use of a deliberate jury instruction in a money laundering case similar to Stafford's. *See Fierro*, 38 F.3d at 772. While *Fierro* did not squarely address the issue raised in *Chen*, regarding the appropriateness of the instruction in cases containing a purposeful element, *Fierro* demonstrates that the court *a quo* did not commit plain error in giving the deliberate ignorance charge.

14

E.

Krein raises sufficiency of the evidence challenges to his convictions of (1) money laundering; (2) conspiracy to commit fraud, interstate transportation of money obtained by fraud, and money laundering; (3) conspiracy involving CBC; and (4) interstate transportation of stolen property. We uphold a verdict if a rational jury could have found that the evidence established the essential elements of the crime beyond a reasonable doubt. *United States v. Ismoila*, 100 F.3d 380, 387 (5th Cir. 1996). We view the evidence, including all reasonable inferences and credibility determinations, in the light most favorable to the verdict. *United States v. Resio-Trejo,* 45 F.3d 907, 910 (5th Cir. 1995).

As the government notes, it is important to recall that as a co-conspirator, Krein faces accomplice liability for the wrong-doings of his co-conspirators in furtherance of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946). So, if there is sufficient evidence that Krein was a member of this conspiracy, and that the commission of these crimes was foreseeable and done in furtherance of the conspiracy, Krein's convictions for them must be affirmed. *Id.* There is ample evidence to support the finding of a conspiracy to defraud investors, that Krein was a member thereof, and that all the wrongdoings that occurred were reasonably foreseeable.

15

F.

Krein challenges the admission of the testimony of Ronald Casper and John Hivital concerning a conviction of Krein's. Casper testified that Krein had defrauded him of $10,000 in 1990; Hivital testified that Krein's company had paid Krein's restitution in the criminal case that had resulted from the fraud against Casper. Krein argues that permitting the testimony of Casper and Hivital was an abuse of discretion and violated FED. R. EVID. 403 and 404(b). We review evidentiary rulings for abuse of discretion. *United States v. West*, 22 F.3d 586, 591 (5th Cir. 1994); *United States v. Robichaux*, 995 F.2d 565, 568 (5th Cir. 1993).

Under *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc), evidence of a defendant's conviction is admissible if (1) the evidence is relevant to an issue other than the defendant's character and (2) the probative value of the evidence is not substantially outweighed by its prejudicial value. On the facts of the instant case, this test is satisfied.

Evidence of Krein's conviction arguably could go to his *modus operandi*, intent, or knowledge. Because the crime committed against Casper was not particularly heinous, it was neither unreasonable nor, more significantly, an abuse of discretion for the court to find that its probative value was not substantially outweighed by its prejudicial value.

16

G.

Krein disputes the calculation of his total offense level. The court increased his sentencing level by 4 on account of the amount of money it found Krein had launderedSS$949,941. *See* U.S.S.G. § 2S1.1(b)(2)(E). Krein asserts that this sum was without evidentiary support. Because the determination is a matter of fact, we review for clear error. *United States v. Tansley*, 986 F.2d 880, 884 (5th Cir. 1993).

The court accepted the PSR's determination that Krein had laundered $949,941. This figure was arrived at via reliance on the FBI's tracing of funds through the conspiracy's multiple schemes. Krein argues that the court should have calculated the amount laundered by using the testimony of the twenty-six defrauded investors who at trial testified to losses of $293,205. Even if Krein's method of calculating loss were superior, the court's was neither unreasonable nor, based on the record, clearly erroneous.

AFFIRMED.