**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 99-60269**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**ANTWON GARDNER; JOHN BRADLEY WARREN,**
**also known as Brad,**

**Defendants-Appellants.**

_____

**Appeal from the United States District Court**
**for the Northern District of Mississippi**
**(1:98-CR-59-4-B-D)**
_____

June 1, 2000

Before POLITZ, JOLLY, and BARKSDALE, Circuit Judges.

PER CURIAM:[1]

Primarily at issue is the sufficiency of the evidence for the drug conspiracy convictions of Antwon Gardner and John Bradley Warren. We **AFFIRM**.

I.

In September 1998, a superseding indictment charged Appellants and 12 others with 24 counts of federal drug trafficking violations. Count One charged conspiracy to possess with intent to distribute crack cocaine, from January 1994 through June 1998, in

_____

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

violation of 21 U.S.C. § 846.  The remaining counts charged varying defendants with distribution of crack cocaine during the same period, in violation of 21 U.S.C. § 841.  In addition to the conspiracy charge, Gardner and Warren were charged with one and three counts, respectively, of aiding and abetting the distribution of crack cocaine.

The other defendants pleaded guilty, including the kingpin, Dorsey, who agreed to testify for the Government.  (Dorsey received a 20-year sentence, subject to a possible reduction for "substantial assistance", pursuant to United States Sentencing Guidelines § 5K1.1.)

In January 1999, a jury found Appellants guilty on all counts. Gardner, classified as a career offender, was sentenced to 360 months imprisonment; Warren, with a lower criminal history category, to 262 months.

## II.

Appellants contest the sufficiency of the evidence for their convictions, the district court's ruling the Government did *not* violate **Brady v. Maryland**, 373 U.S. 83 (1963), and the amount of drugs attributed to them for sentencing purposes.

## A.

For their *conspiracy convictions*, pursuant to FED. R. CRIM. P. 29 and as required for our usual standard of review for a sufficiency challenge, Gardner and Warren moved for judgment of

2

acquittal at the close of the Government's evidence, and renewed the motions post-trial. Accordingly, the evidence is sufficient if, examined in the light most favorable to the jury verdict, "a rational trier of fact could have found ... guilt beyond a reasonable doubt". *United States v. Martinez*, 190 F.3d 673, 676 (5th Cir. 1999) (citation omitted).

For his *distribution conviction*, Gardner's post-trial Rule 29 motion is minimal, to say the least. However, we will, *dubitante*, review it under our usual standard. But, because Warren did *not* make the requisite Rule 29 motion for his *distribution convictions*, our review is confined to whether "the record is devoid of evidence pointing to guilt, or ... the evidence on a key element of the offense [is] so tenuous that a conviction would be shocking". *United States v. Pierre*, 958 F.2d 1304, 1310 (5th Cir. 1992) (en banc)(internal quotation marks and citation omitted).[2]

---

[2]Of course, we, *not the parties*, determine our standard of review. Nevertheless, we expect the parties, *especially the Government*, to state the correct standard. They did *not* do so for the distribution convictions.

1.

Appellants insist the Government offered *no* evidence they and any alleged co-conspirator pooled resources, shared profits, or engaged in joint activity indicating their participation in the conspiracy. At most, according to Appellants, they merely had a buyer-seller relationship with Dorsey, the kingpin.

For a drug trafficking conspiracy, the Government must prove, beyond a reasonable doubt, an agreement between two or more persons to violate the narcotics laws; knowledge of the agreement; intention to participate in it; and actual participation. *See, e.g.*, **United States v. Maseratti**, 1 F.3d 330, 337 (5th Cir. 1993). "The jury may infer any element ... from circumstantial evidence", **United States v. Lechuga**, 888 F.2d 1472, 1476 (5th Cir. 1989), such as "a combination of close relationships or knowing presence". **United States v. Brito**, 136 F.3d 397, 409 (5th Cir. 1998). Knowledge and participation can be inferred from "a single act". **Maseratti**, 1 F.3d at 338. And, although a buyer-seller relationship, by itself, is *not* sufficient proof of a conspiracy, "evidence of such activity goes to whether the defendant intended to join" it. **Id.** at 336.

a.

(1)

While the evidence established that Gardner's brother, Zeb Gardner, was Dorsey's "partner", Barbara Cowan testified that, when, to procure crack, Dorsey's girlfriend contacted Zeb Gardner on Cowan's behalf, Zeb Gardner "sent" Appellant Gardner, who sold Cowan 1/16th of an ounce. And, Dorsey testified that: he regularly sold cocaine to Gardner; he sold it to him at a cheaper price; he and Zeb Gardner "fronted" Gardner (usually this means supplied drugs on consignment, *see* *United States v. Alfaro*, 919 F.2d 962, 963 n.1 (5th Cir. 1990); but, Dorsey testified he did *not* expect to be repaid); and, around Christmas 1996 or 1997, they "gave" Gardner two ounces of crack cocaine, worth about $4,000, so he could sell it and buy Christmas gifts for his children.

This evidence was sufficient for the jury to conclude that Gardner's relationship with Dorsey was *not* simply one of buyer-seller, but that, instead, he "knew of and agreed to the overall objective of the conspiracy". *United States v. Posado-Rios*, 158 F.3d 832, 860 (5th Cir. 1998). *See, e.g.*, *United States v. Freeman*, 164 F.3d 243, 247 (5th Cir. 1999) (mother's unquestioningly accepting package (containing crack) for her son from stranger, presence of crack in clear plastic bag in dining room hutch, and crack, money, weapons and scales in garage, was sufficient evidence to support her conspiracy conviction).

Concerning Warren, Cowan testified she saw Dorsey and Warren cutting up crack cocaine, packaging it, and counting money. Dorsey testified Warren went with him to Memphis to secure 18 ounces of cocaine from Dorsey's supplier, and then to Zeb Gardner's Memphis apartment, where Dorsey "cooked" it into crack, and Warren helped package it. In addition, Dorsey testified he made *no* profit from his sales to Warren, charging him only the wholesale price; and he and Warren, along with other co-conspirators, pooled money to obtain a better deal. This evidence is more than sufficient to show Warren knowingly and actively participated in the conspiracy.

b.

Regarding the conspiracy evidence, Appellants assert, *for the first time in their reply brief*, that: the district court erred in refusing to instruct the jury on the "buyer-seller defense"; and there was an unconstitutional variance between the charged 14-member conspiracy and the proof at trial.

Generally, we do *not* review issues *not* raised in an appellant's opening brief. *See, e.g.*, **Dufrene v. Browning-Ferris, Inc.**, 207 F.3d 264, 268 (5th Cir. 2000). If we choose to review the issues, our review, at most, would be limited to that for plain error. In short, while *not* required to even review this issue, we will examine it for plain error. Under that limited standard, we will *not* exercise our discretion to correct an error unless it

is "clear" or "obvious", "affect[s] substantial rights", and "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings". *See* **United States v. Calverley**, 37 F.3d 160, 162 (5th Cir. 1994) (en banc).

### (1)

Appellants maintain the district court should have granted their requested instruction explaining that a buyer-seller relationship alone is insufficient for conspiracy. The court's conclusion that its conspiracy instruction covered the buyer-seller defense was *not* plain error.

### (2)

Likewise, Appellants have *not* shown plain error regarding the claimed variance. *See* **United States v. Morgan**, 117 F.3d 849, 858-59 (5th Cir. 1997) (where indictment alleges single conspiracy, but evidence shows multiple conspiracies and defendant's involvement in at least *one* of them, there is *no* variance affecting defendant's substantial rights).

### 2.

Regarding their sufficiency challenges to their distribution convictions, Appellants claim the evidence gives equal, or nearly equal, support to a theory of innocence. As noted, for Gardner's one distribution conviction, we will apply the usual standard of review, examining the evidence in the light most favorable to the verdict, and "concentrate on whether the [jury] made a rational

decision to convict or acquit". ***United States v. Jaramillo***, 42 F.3d 920, 923 (5th Cir. 1995) (citation omitted). But, as discussed, and because Warren failed to move for judgment of acquittal on his three distribution convictions, the far more narrow "no evidence" standard of review applies.

It goes without saying that the "jury is the arbiter of" a witness' credibility. ***United States v. Cravero***, 530 F.2d 666, 670 (5th Cir. 1976). As hereinafter discussed, Appellants' contentions concern the jury's credibility calls, and, therefore, fail.

a.

Gardner's one distribution charge (aiding and abetting) concerned his 11 December 1997 sale of 1/16th of an ounce of crack cocaine to Mike Morrison, who solicited it on behalf of Mary Stewart (informant) and Emily Vance (undercover Agent). A defendant aids and abets by "sharing the requisite criminal intent" to distribute drugs. ***Jaramillo***, 42 F.3d at 923. Morrison pleaded guilty to aiding and abetting the sale.

Gardner urges that: as a "hopeless drug addict", Morrison's testimony concerning the circumstances of the sale is confusing and contradictory; the testimony by Stewart and Vance demonstrates only that they paid for and received drugs from Morrison, *not* Gardner; and there was *no* direct evidence to corroborate Morrison's testimony that Gardner stored drugs in a hiding place at his home. As discussed, this decision was for the jury.

8

b.

Warren's distribution charges concern his three sales to Government informants. Barbara Cowan testified she bought $300 worth of crack from him on 15 March 1998; Stewart, $300 worth on 13 March and $400 worth on 8 April 1998.

Warren claims the testimony by Cowan, Stewart, and two Agents who surveilled the sales was confusing and contradictory. He notes the court allowed the jury to view (but *not* take to the jury room) the transcript of a taped conversation between Stewart and Warren during one of the sales, that was arguably inaccurate due to the poor quality of the tape. Needless to say, the record is *not* devoid of evidence supporting the conviction. In any event, again, this decision was for the jury.

B.

Appellants contend the Government's failure to notify them of its motion to continue sentencing Morrison and Dorsey until after trial was a *Brady* violation. Gardner maintains also that Morrison's testimony on this issue was misleading, in violation of *Napue v. Illinois*, 360 U.S. 264, 269-70 (1959). Appellants' motions for dismissal were denied.

Under *Brady*, due process is denied when the Government withholds requested evidence, including impeachment evidence, that is material and favorable to the accused. *Thompson v. Cain*, 161 F.3d 802, 806 (5th Cir. 1998) (citations omitted). *See United*

9

*States v. Bagley*, 473 U.S. 667, 676 (1985).  Evidence is "material" under **Brady** when there is "a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different".  **Allridge v. Scott**, 41 F.3d 213, 217 (5th Cir. 1994).  Likewise, under **Napue**, due process is violated when the Government "knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected".  **Faulder v. Johnson**, 81 F.3d 515, 519 (5th Cir. 1996).

The district court's **Brady** and **Napue** rulings are reviewed *de novo*.  *See* **Felder v. Johnson**, 180 F.3d 206, 211 (5th Cir. 1999) (**Brady**); **United States v. O'Keefe**, 128 F.3d 885, 893 (5th Cir. 1997) (**Napue**).

The issue of Morrison's sentencing arose during his cross-examination by Gardner's attorney:

> Q:   It is the Government, the United States Attorney that has to ask the Court for the downward departure, isn't it?
>
> A:   [Morrison] I have not been promised anything.
>
> ....
>
> Q:   ... My question is that they told you, you have to provide information to them that they deem to be substantial assistance before they will ask the Court to cut your sentence; isn't that correct?
>
> A:   To my knowledge.
>
> Q:   And you have not been sentenced in this case yet, have you?

10

A:    No.

Q:    Has ... the government agreed to delay your sentencing until after you testify in this case?

A:    I don't know.  I cannot really say what –
[Government Prosecutor]:  *Objection, Your Honor, I know [Gardner's attorney] knows that the timing of the sentence is entirely within the discretion of the Court and we have nothing to do with it.*

THE COURT:    Objection sustained.  Of course, the witness does not know about those things anyway.

(Emphasis added.)

Gardner contends that, because the Government represented it had "nothing to do with" the timing of Morrison's sentencing (when, in fact, it *had* filed a motion to delay), Gardner did *not* learn of it until after the close of the evidence, and the jury was misled. Warren asserts that, because the court sustained the Government's objection to Gardner's questioning of Morrison on this issue, law of the case prevented him from similarly questioning Dorsey.

The Government responds that:  the prosecutor did *not* know the continuance motion had been filed, having joined the prosecution immediately before trial; if he had known about the motion, he would *not* have objected; Appellants' counsel recognized the prosecutor made an honest mistake; and the prosecutor acknowledged his mistake to the court, as well as to the jury in the Government's closing argument.

11

The Government maintains also that there was *no* suppression because its motion was in the public record prior to trial, and Appellants became aware of it before the trial ended; and its motion was *not* material, but cumulative, because Morrison and Dorsey each testified that they had *not* yet been sentenced, and that they were aware of the possibility of the Government filing a § 5K1.1 motion on their behalf. It asserts that: because Morrison testified he did *not* know the motion had been filed, its filing had *no* effect on his credibility because *his* testimony was truthful; both Morrison and Dorsey were thoroughly questioned by Appellants' counsel; and the court allowed Appellants to include the § 5K1.1 issue in their closing arguments. It additionally notes that Appellants could have asked to recall Morrison and Dorsey for further cross-examination, but failed to do so.

Obviously, the Government's mistaken objection is most regrettable, if not intolerable. Such lapses must *not* be repeated. Nevertheless, Appellants have *not* demonstrated a **Brady** or **Napue** violation, especially in the light of the Government's explaining its mistake to the jury, the court's allowing Appellants to address the issue in their respective closing arguments, and Appellants' *not* attempting to recall Morrison and Dorsey.

C.

Finally, concerning the drug amounts used for base offense level calculations, Appellants claim the district court erred in

12

adopting the fact-findings and sentencing recommendations in their Pre-Sentence Investigation Reports (PSR), which they contend improperly included drugs sold by other co-conspirators. Gardner objected to the amount attributed to him by the PSR; Warren failed to do so. Accordingly, our review differs for each Appellant.

1.

Notwithstanding his PSR-objection, Gardner did *not* offer evidence in support at sentencing. His objection to the PSR calculation was overruled.

To warrant vacating his sentence, Gardner must show the district court violated a law, incorrectly applied the Sentencing Guidelines, or imposed an unreasonable sentence beyond the applicable Guidelines range. **Maseratti**, 1 F.3d at 339 (citing 18 U.S.C. § 3742(e)). The court's application of the Guidelines is reviewed *de novo*; its fact-finding, for clear error. *See, e.g.*, **United States v. Hull**, 160 F.3d 265, 268 (5th Cir. 1998). The drug quantity attributed to a defendant at sentencing is a fact-finding. **Maseratti**, 1 F.3d at 340 (citing **United States v. Ponce**, 917 F.2d 841, 842 (5th Cir. 1990), *cert. denied*, 499 U.S. 940 (1991)).

The scope of a defendant's relevant conduct for sentencing is addressed in U.S.S.G. § 1B1.3(a)(1). *See* **Hull**, 160 F.3d at 268. Under § 1B1.3(a)(1)(A), "[a] co-conspirator is accountable for his *own* conduct", as well as, under subpart (B), for "the foreseeable acts of his co-conspirators committed in furtherance of the

13

conspiracy". *Maseratti*, 1 F.3d at 340 (citation omitted; emphasis added); *see Hull*, 160 F.3d at 268.

"Participation in a conspiracy, however, does not automatically give rise to co-conspirator liability under § 1B1.3(a)(1)(B)." *Hull*, 160 F.3d at 269. Instead, the court is required to "make particularized findings" regarding the scope of agreement and foreseeability. *Id.* (citations omitted).

The PSR held Gardner accountable for over 1.5 kilograms of crack cocaine. The drug quantity table in U.S.S.G. § 2D1.1 is maximized at that amount. Gardner claims the bulk of the Government's evidence concerned his sale of only 1/16th of an ounce. He asserts that others' distribution was *not* "reasonably foreseeable", claiming the evidence showed that, at most, he shared a common source of supply (Dorsey) with other street level drug dealers.

The Government counters that the PSR properly attributed 1.5 kilograms to Gardner because, based on the evidence of his involvement in the conspiracy, it was reasonably foreseeable; and, in the alternative, the evidence showed his personal involvement with at least that amount. It points to evidence that Dorsey and Zeb Gardner regularly supplied Gardner with one-half ounce to one ounce quantities of crack cocaine from at least late 1996 until July 1998 (when Dorsey was arrested on drug charges); and

14

Morrison's testimony that he saw a stash of crack cocaine at Gardner's home.

The record reflects Gardner's *personal* involvement with at least 1.5 kilograms. In addition to the district court's fact-findings with regard to the above-discussed evidence, which were *not* clearly erroneous, Dorsey testified that, in 1994, he obtained drugs in Memphis up to three times a week or more, and regularly sold a half-ounce, or an ounce, of it to Gardner.

One ounce equals 28.35 grams. *See* U.S.S.G. § 2D1.1. If Dorsey sold Gardner a half-ounce three times a week in 1994, or 78 ounces for that year alone, the amount totals more than 2200 grams, well over 1.5 kilograms. Again, this amount does *not* even include the additional amounts in the 1996-98 period.

The evidence being more than adequate to support Gardner's personal involvement with at least 1.5 kilograms, we need *not* address whether the district court's adoption of the PSR's reasonable foreseeability finding was clearly erroneous. *See United States v. McKinney*, 53 F.3d 664, 677 (5th Cir. 1995) (demonstration of personal involvement renders foreseeability inquiry moot).

2.

As noted, Warren did *not* object, either to the PSR or at sentencing, to the drug amount attributed to him. Therefore, as he concedes in his reply brief, our review is *only* for plain error, as

15

described *supra*. *See* **United States v. McCaskey**, 9 F.3d 368, 376 (5th Cir. 1993) (plain error review applicable when defendant fails to object to PSR or at sentencing). Fact issues that could have been resolved by the district court are *not* plain error. **Id.**

Warren contends that: the Government did *not* demonstrate other co-conspirators' conduct was reasonably foreseeable; and, therefore, his sentence was plain error. However, we need *not* address this contention, because there was ample record evidence of his personal involvement with more than 1.5 kilograms of crack cocaine.

For example, Dorsey testified that: beginning in 1996 or 1997, Warren began buying an ounce, and then four and one-half, nine, or 18 ounce quantities on a regular basis; and, after Dorsey became Warren's main supplier, Dorsey went to Memphis once or twice a week to supply him with nine to 18 ounces, until Dorsey's arrest in July 1998. Further, the PSR "is considered reliable", **United States v. Vital**, 68 F.3d 114, 120 (5th Cir. 1995); and, because Warren did *not* object to it or attempt to rebut its findings, the court's adoption of the facts contained in it, without further inquiry, was *not* plain error. **United States v. Puig-Infante**, 19 F.3d 929, 943 (5th Cir. 1994).

### III.

For the foregoing reasons, the judgment is

**AFFIRMED.**

16