Revised January 26, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 96-11519

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MARCUS LELAND FREEMAN, a.k.a. Big Mark; JESSE JACKSON, JR.,
a.k.a. Jesse Oliver Jackson, Jr.; GLORIA ATKINS WRIGHT; RUDY
WILLIAMS; STACEY WYNN; KEITH FRANKLIN,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Texas
_____
January 5, 1999

Before WISDOM, DAVIS, and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellants Marcus Leland Freeman, Jesse Jackson, Jr., Gloria
Atkins Wright, Rudy Williams, Stacey Wynn, and Keith Franklin were
convicted of conspiracy to distribute cocaine and cocaine base and
other related counts. They appeal their convictions and sentences
on a number of points. We affirm all counts of conviction except
for Williams's conviction on Count 29.

I.

Appellants and others were indicted and tried for conspiracy
to distribute cocaine and cocaine base ("crack cocaine"). The

Government presented evidence that Appellants and their fellow conspirators bought, sold, and distributed cocaine and crack cocaine from 1989 through 1995. Appellants were all convicted for conspiracy and were individually convicted on other substantive counts. We review the evidence, including all reasonable inferences drawn therefrom and all credibility determinations, in the light most favorable to the verdict. United States v. Resio-Trejo, 45 F.3d 907, 910-11 (5th Cir. 1995).

A.

In May 1995, several men, including Appellants Jesse Jackson, Jr., Stacey Wynn, Rudy Williams, and Keith Franklin, made a trip from Fort Worth, Texas to Crosby, Texas, just outside of Houston. In Crosby, these Appellants visited a nightclub owned by Bobby Reed, a major Fort Worth cocaine dealer, and arranged for the purchase of five kilograms of cocaine for $140,000. The group paid for the drugs at the nightclub and then returned to Fort Worth, where the drugs were delivered to them.

Also in May 1995, Ronnie Bennett, another member of the distribution chain, was arrested after delivering a half kilogram of crack cocaine to a confidential informant in Fort Worth. When he was arrested, Bennett stated that he had purchased the drugs from Jesse Jackson, Jr. and Stacey Wynn. However, later that day, Bennett indicated that he had actually purchased the drugs from Appellant Rudy Williams. At trial, as a cooperating coconspirator, Bennett testified that he had purchased the half kilogram of crack cocaine from Williams, not from Wynn and Jackson.

2

Appellant Marcus Freeman was not a participant in the Crosby trip. Instead, he was arrested when a search executed upon his house revealed large quantities of crack cocaine and currency. Freeman named Glen Williams and Pooh Biggins, who both worked at Bobby Reed's automotive shop, as his suppliers.

In support of the drug conspiracy, Appellants Jesse Jackson, Jr. and Stacey Wynn owned Exclusive Paging, a pager business operated from a series of locations in the Fort Worth area. Exclusive Paging served as a front for Jackson's and Wynn's drug dealing and also provided communications equipment for the drug conspiracy.

Appellant Gloria Atkins Wright is the mother of coconspirator Freddie Phillips. Another coconspirator, Evangela Asberry, testified that she went to Wright's house looking for Phillips to deliver a package that she believed to contain crack cocaine. Phillips was not at Wright's house, so Asberry left the package with Wright. Asberry did not see Wright look inside the package; Wright stated that she would give it to Phillips. At a later date, when the police executed a search warrant on Wright's house, they found weapons, two hundred grams of crack cocaine, substantial amounts of cash in small denominations, and scales of the kind used by drug dealers.

B.

These events, along with numerous others, led to the indictment of nineteen members of the drug conspiracy loosely centered around Bobby Reed. Following the indictment, several of

3

the alleged conspirators cooperated with the Government.  In the end, twelve of the indicted conspirators were brought to trial.  In order to better manage the trial, the district court divided the case into two parts and tried six defendants in each trial.  This Court has already ruled on the appeal arising out of the first trial, in which Frederick Asberry, Edward Gabriel McBrown, Frank Stolden, Bobby Wayne Reed, Kevin Reed, and Roderick Gene Reed were convicted of drug conspiracy and other counts.  United States v. McBrown, No. 96-11491, 149 F.3d 1176 (5th Cir. 1998) (unpublished table opinion).  The present appeal is from the second trial.

In the second trial, Defendants-Appellants Marcus Leland Freeman, Jesse Jackson, Jr., Gloria Atkins Wright, Rudy Williams, Stacey Wynn, and Keith Franklin were tried for conspiring to distribute cocaine and crack cocaine.  Most of the Appellants were also tried on additional substantive counts specific to their individual actions within the drug conspiracy.  All six defendants were found guilty of conspiring to distribute cocaine and crack cocaine.  In addition, Appellant Marcus Freeman was found guilty of maintaining a building for the purpose of distributing crack cocaine.  Appellants Jesse Jackson, Jr., Gloria Atkins Wright, and Stacey Wynn were found guilty of possessing crack cocaine with the intent to distribute.  Appellant Rudy Williams was found guilty of distributing crack cocaine.  All six Appellants challenge their convictions.  Appellants Freeman, Jackson, and Williams also appeal their sentences.

II.

4

A.

Appellants make a number of arguments challenging their convictions. We address these arguments in turn.

1.

Appellants Keith Franklin, Rudy Williams, and Gloria Atkins Wright contend that the evidence is insufficient to support their convictions. In reviewing a sufficiency challenge, we uphold the jury's verdict if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. United States v. Walters, 87 F.3d 663, 667 (5th Cir.), cert. denied, 117 S. Ct. 498 (1996). We consider Franklin's and Wright's challenge below. We consider Williams's claim later in Section II.A.3.

The Government presented considerable evidence that Franklin was a participant in the Crosby trip, a centerpiece of the Government's conspiracy case. In addition, Raynetta Taylor testified to three separate drug purchases from Franklin. The Government also presented evidence that Franklin had large sums of cash and that his name was included in Exclusive Paging's drug notes. The jury's verdict is thus adequately supported by the record.

The evidence supporting Wright's conviction is neither as strong nor as clear. Wright was not a participant in the Crosby trip, nor was she directly implicated in any drug sale or purchase. Instead, the Government's case against Wright was based primarily on two events.

5

First, Evangela Asberry testified that her husband, Fred Asberry, sold drugs to Wright's son Freddie Phillips. The Asberrys once went to Wright's house to deliver a package for Phillips. Evangela Asberry went to the door and rang the doorbell. Wright answered the door and indicated that Phillips was not there.[1] Asberry then gave Wright a brown paper bag containing crack cocaine, indicating that it was for Phillips. Wright, who had never met Asberry, did not ask her to identify herself or the contents of the package.

Second, in November 1994, a search warrant was executed on Wright's home. During this search, the police found a clear plastic bag containing 228.95 grams of crack cocaine in the top drawer of a hutch in the dining area. The cocaine was on top of a dish of Halloween candy and was accompanied by over one thousand dollars in small denominations thrown loosely in the drawer. In addition, the police found weapons in the house and a set of scales in the garage. At trial, Phillips, a major participant in the drug conspiracy, testified that the cocaine, the scales, and the cash were his and that his mother was not aware that they were in the house.

The combination of these two events, when viewed in the light most favorable to the verdict, is sufficient to support the jury's verdict. The jury was entitled to reject Phillips's testimony and infer that his mother was aware that he trafficked in cocaine and

_____

[1] Phillips did not live at Wright's residence. However, he did possess a key and visited Wright's home with some regularity.

kept cocaine in her home. A key fact supporting such a determination is that the crack cocaine found in Wright's house was in a clear plastic bag in the top drawer of the hutch in a central area of the house. The loose currency was also in the same drawer in plain view. The jury was entitled to infer that when Phillips (or his associate) placed the crack cocaine in that location in Wright's dining room, they were not concerned about concealing the drugs from her. The jury could have reached the same conclusion with respect to the delivery of crack cocaine in a plain brown paper bag. Such openness runs counter to Phillips's dual assertions that the drugs and scales were his and that he kept his involvement in the drug trade well hidden from his mother. Thus, the jury could have inferred that Wright was aware of the presence of the drugs.

Wright contends that the package of crack cocaine in the hutch cannot be attributed to her under the doctrine of constructive possession. We disagree. At the time of the search, even though Phillips had a key and apparently visited the house with some regularity, Wright alone lived in the house. The jury, which was instructed on the doctrines of constructive and joint possession, could have reasonably attributed the crack cocaine to Wright. See United States v. Torres, 114 F.3d 520, 524 (5th Cir.), cert. denied, 118 S. Ct. 318 (1997) ("Constructive possession is defined as ownership, dominion, or control over illegal drugs or dominion over the premises where drugs are found."). Thus, because the jury reasonably could have determined that Wright was a knowing and

7

willing participant in the drug conspiracy and that the crack cocaine in the hutch was entrusted to her, the evidence supports her conviction.

2.

Appellants Jesse Jackson, Jr., Rudy Williams, Keith Franklin, and Marcus Freeman contend that the Government withheld information that it was required to disclose to the Defendants under Brady v. Maryland, 373 U.S. 83, 86-87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963), and Giglio v. United States, 405 U.S. 150, 153-54, 92 S. Ct. 763, 765-66, 31 L. Ed. 2d 104 (1972).  Under Brady and Giglio, the Government must disclose to the defense any evidence that would tend to show a prosecution witness's bias, could be used to impeach him, or is otherwise exculpatory of the defendant. Brady, 373 U.S. at 86-87, 83 S. Ct. at 1196-97; Giglio, 405 U.S. at 153-54, 92 S. Ct. at 765-66.

Appellants contend that the Government wrongfully failed to disclose that FBI Special Agent Garrett Floyd brought John Clay, who testified for the Government in the first trial, to his girlfriend's house for a conjugal visit.  This alleged grant of a conjugal visit came to light between the first and the second trials.  When these events were brought to the district court's attention, the Government advised the court that it would not use Clay or Special Agent Floyd as witnesses in the second trial.  The district court determined that so long as neither Clay nor Floyd testified, the issue of their potential bias or misconduct was not relevant.  The district court therefore granted a Government motion

8

in limine seeking to prohibit the defense from raising the alleged conjugal visit during the trial. Appellants contend that the Government used another witness, Officer K.M. Sam, to "parrot" Clay's testimony and thus circumvent the district court's rulings.

Appellants further contend that Officer Sam granted coconspirator Glen Williams conjugal visits and that, also in violation of Brady, this information was not revealed to the defense. Glen Williams, however, chose not to cooperate with the Government and was never called as a Government witness.

Appellants also contend that the Government violated Brady by failing to notify Appellants that DEA analyst Ann Castillo was being investigated for allegedly falsifying previous narcotics analysis reports. During discovery, the defense was given documents showing that Castillo had tested 632 grams of crack cocaine. The Government also notified defense counsel that DEA analyst J.E. Koles retested the sample and that the results were the same. The Government, however, did not mention the pending investigation of Castillo. At trial, only Koles's analysis was used. The district court denied post-trial relief on Defendants' claim that Brady mandated disclosure of the Castillo investigation. The district court ruled that any potential problems concerning Castillo were cured by retesting the crack cocaine.

To succeed on their Brady claims, Appellants must establish that: (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material either to guilt or to punishment. United States v. Ellender, 947 F.2d 748, 756

9

(5th Cir. 1991).  We review Brady determinations de novo.  United States v. Green, 46 F.3d 461, 464 (5th Cir. 1995).  However, we reverse for Brady violations only if there is a reasonable probability that the outcome of the trial would have been different if the evidence had been disclosed to the jury.  United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985).  When there are a number of Brady violations, the correct determination is whether the "cumulative effect of all such evidence suppressed by the government . . . raises a reasonable probability that its disclosure would have produced a different result . . . ."  Kyles v. Whitley, 514 U.S. 419, 421-22, 115 S. Ct. 1555, 1560, 131 L. Ed. 2d 490 (1995).

With respect to the first two Brady claims--failure to reveal the alleged conjugal visits--a previous panel of this Court reviewed the first trial, in which Clay actually testified.  The panel rejected the Brady claims because there was "not a reasonable probability that the outcome of the trial would have been different if the evidence concerning the sexual encounters had been disclosed."[2]  McBrown, No 96-11491, at 21.  In reaching this decision, the previous panel evaluated the conjugal visits granted to Clay and to Glen Williams.  In the second trial--the one we have under consideration--neither Clay nor Williams testified.  If the impeaching material could have been used at all, its use would not have affected the outcome.

_____

[2] The prior panel assumed arguendo that the sexual encounters did in fact take place as alleged.  We make the same assumption.

10

With respect to the third alleged <u>Brady</u> violation--the failure to disclose the investigation of Ann Castillo--we find no merit to Appellants' argument.  We agree with the district court that by retesting the crack cocaine and using only the retested analysis at trial, the Government cured any concerns that might have been raised by the Castillo investigation.

In sum, assuming without deciding that the Appellants established three <u>Brady</u> violations, these violations do not individually or cumulatively provide a reasonable probability that the outcome of the trial would have been different had all the suppressed evidence been admitted.  <u>See</u> <u>Kyles</u>, 514 U.S. at 421-22, 115 S. Ct. at 1560.  Therefore, we reject Appellants' <u>Brady</u> claims.

3.

Appellant Rudy Williams contends that the district court abused its discretion when it cut short his attorney's cross-examination of Ronnie Bennett.  We agree.

We start from the bedrock premise that district courts retain broad discretion in managing trials, including controlling the length and scope of cross-examination.  Thus, district court rulings on the length and scope of cross-examination are reviewed only for clear abuse of discretion.  <u>United States v. Martinez</u>, 151 F.3d 384, 390 (5th Cir.), <u>cert. denied</u>, 119 S. Ct. 572 (1998).

Ronnie Bennett, a coconspirator who accepted a plea bargain, testified for the Government in the second trial.  Bennett had been arrested when he attempted to sell approximately one-half kilogram of crack cocaine to a Government informant.  Upon his arrest,

11

Bennett told the police that he had purchased the crack cocaine from Stacey Wynn and Jesse Jackson, Jr. However, later that same day, Bennett changed his story, stating that he had actually purchased the crack cocaine from Appellant Rudy Williams. At trial, consistent with this second statement, Bennett testified that he had purchased the crack cocaine from Williams. The Government obtained an explanation of the inconsistent statements from Bennett as part of its direct examination. When the Government asked Bennett why he had changed his story, Bennett testified that he originally named Wynn and Jackson because he knew that they were already under investigation for cocaine distribution and he did not want to cast suspicion on Williams.

When Bennett was tendered for cross-examination, the district court refused to permit either Williams's attorney or any of the other defense counsel to cross-examine Bennett on the inconsistent statements. The district court ruled that because Bennett freely admitted the inconsistent statements on direct examination, it would not permit further questioning or impeachment of the witness on that subject. When defense counsel attempted to question Bennett about the statements, the district court stated, "I don't think those statements [given by Bennett on the day he was arrested] are inconsistent with anything he's said on the stand, so I'm not going to permit cross-examination on the basis of the statements." Williams challenges this restriction on Bennett's cross-examination.

The practice of introducing impeaching statements on direct

12

examination in order to minimize their effect is a "time-honored trial tactic." United States v. Ewings, 936 F.2d 903, 909 (7th Cir. 1991); see also United States v. Livingston, 816 F.2d 184, 191 (5th Cir. 1987) (permitting introduction of impeaching statements in direct testimony). However, when the Government steals the defense's thunder by presenting a prior inconsistent statement as part of its direct examination of a witness, this does not destroy the defense's right to cross-examination on those statements. The defense must still be given the opportunity to develop testimony on cross-examination tending to show that the prior favorable statement is more likely true than the prior unfavorable statement. Similarly, the defense should have the opportunity to cast doubt on the reason given by the witness for changing his version of the facts.

For example, counsel should be able to explore: why the witness initially felt greater allegiance to Williams than to Wynn and Jackson, but then changed his loyalties; whether the witness perceived that the Government would make a more favorable plea bargain with him if he implicated Williams; whether animosity developed between the witness and Williams after he gave the first, favorable statement.

In sum, the district court abused its discretion in refusing to give counsel an adequate opportunity to cross-examine Bennett. Because Bennett's testimony was central to the Government's case against Williams on Count 29--the distribution count that is directly related to Bennett's drug purchase--we must vacate

13

Williams's conviction on that count.

Williams argues next that once Count 29 is vacated, the conspiracy count cannot stand. To resolve this issue, we consider the record under the assumption that the jury would have disregarded Bennett's testimony. See Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L. Ed. 2d 674 (1986) ("The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.").

As indicated above, one of the centerpieces of the Government's evidence was the Crosby trip. The jury heard substantial evidence, beyond anything testified to by Ronnie Bennett, that Rudy Williams participated in this trip. Both Sylvester Jackson and Jesse Jackson, Jr. testified that Williams was with them on the Crosby trip. Sylvester Jackson testified that Williams contributed funds to make up the $140,000 pot used to buy the drugs. In addition, Keith Franklin told DEA Special Agent Terri White that Williams was on the trip. The evidence was overwhelming that the Crosby trip took place in the manner alleged by the Government and that the purpose of this trip was to purchase approximately five kilograms of cocaine. Therefore, because of the strength of the evidence linking Williams to the Crosby trip, the district court's error in limiting Bennett's cross-examination was harmless as to Count 1--the drug conspiracy count.

B.

14

Appellant Stacey Wynn argues that he received ineffective assistance of counsel. He contends that his attorney, Kelley Pace, was late to court on a number of occasions, including jury selection. Indeed, because of this chronic tardiness, the district court found Pace in contempt and required him to obtain a hotel room close to the courthouse. In addition to Pace's tardiness, Wynn's motion for a new trial was ruled invalid because Pace's secretary, not Pace himself, signed the motion. When new counsel replaced Pace, the new counsel filed a letter from Dr. Tynus McNeel with the district court. Dr. McNeel stated that Pace had been admitted to the Talbot Center in Atlanta for extensive psychiatric treatment. The letter implied that Pace was undergoing psychiatric treatment during Wynn's trial.

As Wynn concedes, direct appeal is not the preferred vehicle for raising an ineffective assistance of counsel claim. United States v. Navejar, 963 F.2d 732, 735 (5th Cir. 1992) ("[A] claim of ineffective assistance of counsel generally cannot be addressed on direct appeal unless the claim has been presented to the district court; otherwise there is no opportunity for the development of an adequate record on the merits of that serious allegation."). Instead, ineffective assistance claims are generally raised in a habeas petition. We follow this path in order to allow for the development of a factual record regarding counsel's alleged ineffectiveness. See, e.g., United States v. Medina, 118 F.3d 371, 373 (5th Cir. 1997).

We agree with the Government that we should not stray from our

15

usual practice. Because this issue was not raised before the district court, it is properly raised by Wynn in a habeas petition, not on direct appeal. On habeas, the district court will be able to develop an adequate record to evaluate the merits of Wynn's claim.

C.

Appellants make a number of additional arguments. Appellants Marcus Freeman and Keith Franklin argue that the district court abused its discretion by improperly restricting the cross-examination and impeachment of Government witnesses. Freeman and Jesse Jackson, Jr. contend that the Government improperly commented on the burden of proof and on Appellants' decision to remain silent. Appellant Rudy Williams contends that the district court abused its discretion in denying his motion to sever. Williams also contends that there was a fatal variance between the conspiracy alleged in the indictment and the evidence of conspiracy presented at trial. We have reviewed these contentions and have determined them to be without merit.

D.

Appellants Marcus Freeman, Jesse Jackson, Jr., and Rudy Williams also challenge their sentences. Freeman argues that the district court erred in sentencing him to life in prison because the two prior felony convictions the district court relied on under 21 U.S.C. § 841(b)(1)(A) to enhance his sentence were not final before he committed the instant offense. Freeman pled guilty to the two prior felony drug counts in 1990, after the beginning of

16

the drug conspiracy alleged in Count 1 in this case.  However, at sentencing, the district court found that Freeman did not join the conspiracy until 1992 and thus the 1990 convictions were properly viewed as prior convictions.  The district court did not err in finding that Freeman entered the instant conspiracy in 1992 and that the 1990 convictions were therefore "prior" convictions.  See United States v. De Veal, 959 F.2d 536, 538-39 (5th Cir. 1992).

Appellant Jesse Jackson, Jr. argues that the district court committed clear error in enhancing his sentence for obstruction of justice.  The district court enhanced Jackson's sentence after finding that he had testified falsely.  The jury obviously viewed Jackson's testimony to be false and we therefore decline to find that the district court clearly erred in making this determination.

Appellant Rudy Williams contends that his sentencing was unconstitutional because the district court used unreliable evidence contained in his Presentence Investigation report ("PSI") in determining the quantity of drugs that should be attributed to him.  At sentencing, however, Williams offered no evidence supporting his allegation that the evidence relating to drug quantity contained in the PSI was unreliable.  Therefore, the district court, after hearing the evidence at trial, reviewing the PSI, and providing Williams with a chance to present rebuttal evidence, did not err in adopting the drug quantities presented in the PSI.  See, e.g., United States v. Valencia, 44 F.3d 269, 274 (5th Cir. 1995) ("A district court may adopt facts contained in the [PSI] without further inquiry if the facts have an adequate

17

evidentiary basis and the defendant does not present rebuttal evidence.").

## Conclusion

For reasons stated above, we affirm all of Appellants' convictions except for Rudy Williams's conviction on Count 29. We vacate Rudy Williams's conviction and sentence on Count 29. Except for Rudy Williams, we also affirm all of Appellants' sentences. With respect to Rudy Williams, the Government is granted a reasonable time to retry Williams on Count 29 if it elects to do so. Whether or not Williams is retried, we remand his case to the district court for resentencing.

AFFIRMED in part, VACATED in part, and REMANDED.