# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

―――――――――

m 00-11210
Summary Calendar

―――――――――

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

TEDDY WAYNE SOLOMON,

Defendant-Appellant.

―――――――――――――

Appeal from the United States District Court
for the Northern District of Texas
(3:98-CR-299-1-X)

―――――――――――――

September 21, 2001

Before JONES, SMITH, and
EMILIO M. GARZA, Circuit Judges.

PER CURIAM:*

―――――――――――

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Teddy Solomon appeals his convictions of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 (2001). Finding no error, we affirm.

I.

Based on complaints concerning Solomon's investment program, the FBI, the Securities and Exchange Commission ("SEC"), and the Texas State Securities Board conducted an investigation of Quantum Group, which listed Solomon as its president and CEO. After being questioned by undercover agents about

his investment program, Solomon represented that investments with Quantum would yield a 900% return over three months.

The agents then revealed their identities and questioned Solomon about his investment scheme. He admitted that he had made false representations and that he falsely had told investors that Quantum had made profits through its trading programs. The agents told Solomon that the trading programs he had advertised did not exist, that he was not authorized to offer securities, and that he needed to cease operations. Solomon, however, continued to do business at Quantum, even after the federal district court had issued a temporary restraining order to cease operations.

At trial, one of Solomon's employees testified as a government witness concerning false representations Solomon had made during the course of his scheme. Several investors testified about the money they lost. FBI agent Brian Hurst testified that some investors had received money back as part of a Ponzi scheme and that Solomon had used the investor deposits for personal expenditures, including purchases of luxury automobiles and had used none of the disbursements for legitimate trading programs. Phil Offil of the SEC testified about the fraudulent nature of Solomon's trading program and described the operation as a Ponzi scheme. Investors deposited approximately $4 million in Quantum's bank accounts between May and October 1997.

## II.

A jury found Soloman guilty. The court departed upward from the sentencing guidelines and assessed 293 months' imprisonment, five years' supervised release, $2,357,701.94 in restitution, and a fine of $150,000.

## III.

Solomon argues that the court erred in allowing the government to include his prior conviction in the indictment,[2] because that conviction was not a necessary element of the offense as charged. We review only for abuse of discretion the decision whether to strike allegations from an indictment. *United States v. Hernandez-Guevara*, 162 F.3d 863, 869 (5th Cir. 1998); *United States v. Graves*, 5 F.3d 1546, 1550 (5th Cir. 1993).

Rule 7(d), FED R. CRIM P., provides that "[t]he Court on motion of the defendant may strike surplusage from indictment or information." To strike surplusage, the language in the indictment must be "irrelevant, inflammatory, and prejudicial." *Graves*, 5 F.3d at 1550 (citing *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971)). Because this standard is strict, a court rarely grants such a motion. *See Bullock*, 451 F.2d at 888; *United States v. Oakar*, 111 F.3d 146, 157 (D.C. Cir. 1997); *see also* 1 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 127, at 639 (3d ed. 1999).

Where information in an indictment is sufficiently relevant to the charged offense, the

---

[2] The indictment alleged as follows:

Also, as part of the scheme and artifice to defraud Defendant Solomon and Stevens failed to notify investors that Defendant Solomon was convicted in 1994 on federal charges of mail fraud and possession of a forged security, and that he had been sentenced to twenty-four (24) months in prison followed by three years of supervised release. The defendants were required to make these disclosures to potential investors as a condition of offering and selling securities to the public.

court should not strike it, no matter how prejudicial it may be. *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990); *United States v. Edwards*, 72 F. Supp. 2d 664, 667 (M.D. La. 1999), *appeal dismissed*, 206 F.3d 461 (5th Cir. 2000). The mere fact that information in an indictment does not constitute an element of the charged offense does not require that it be stricken. *Id.* (citation omitted).

Solomon's prior conviction was sufficiently relevant to the mail and wire fraud indictments.[3] Thus, the court did not abuse its discretion.

## IV.

Solomon contends that the indictment was defective because it failed to allege the materiality element required for establishing mail and wire fraud. He reasons that the indictment failed to "tie a particular mailing or wire transfer to any specified false representation(s)." Normally, we review the sufficiency of an indictment *de novo*. *United States v. Fitzgerald*, 89 F.3d 218, 221 (5th Cir. 1996). Because Solomon did not raise this objection in the district court, however, we review this issue giving "maximum liberality" to the indictment. *United States v. Richards*, 204 F.3d

177, 191 (5th Cir.), *cert. denied*, 531 U.S. 826 (2000).

A mail or wire fraud indictment must allege that the defendant made false representations that were material. *Neder*, 527 U.S. at 25. A matter is material if

(a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

*Id.* at 22 n.5 (quoting RESTATEMENT (SECOND) OF TORTS § 538 (1977)).

In determining the sufficiency of an indictment, the law does not compel "a ritual of words." *Richards*, 204 F.3d at 191. Though the indictment did not contain the word "materiality," it did allege many specific material omissions and misrepresentations made by Solomon. In a mail fraud indictment that does not specifically allege materiality, allegations of specific facts may be sufficient to warrant the inference of materiality. *Richards*, 204 F.3d at 192; *United States v. McGough*, 510 F.2d 598, 603 (5th Cir. 1975). Solomon's indictment alleged specific facts by plainly stating that the investment scheme relied on misrepresentations and that "as a result of the aforementioned scheme and artifice to defraud, investors . . . lost in excess of $1 million."

## V.

Solomon avers that the district court erred by allowing him to go to trial with the lawyers

---

[3] Materiality of falsehood is an element of the mail and wire fraud offenses. *Neder v. United States*, 527 U.S. 1, 25 (1999). One can demonstrate fraud by a material misrepresentation or omission. *United States v. Finney*, 714 F.2d 420, 423 (5th Cir. 1983). The government contends that Solomon was required to disclose his prior conviction as an SEC licensing requirement. Because we conclude that Solomon's convictions were sufficiently relevant to be included in the indictment, we express no view on the issue of whether Solomon's failure to disclose his prior conviction to investors constituted a material omission for the offenses of wire and mail fraud.

he chose. The court allowed him to substitute counsel on the eve of trial; he does not aver that the court erred in denying a continuance. Instead, he contends that the court should have advised him of the risks of proceeding with substitute, unprepared counsel. Because Solomon did not challenge these matters in the district court, we review for plain error. *See United States v. Richardson*, 168 F.3d 836, 839 n.9 (5th Cir.), *cert. denied*, 526 U.S. 1145 (1999).

Solomon cites no authoritySSand we know of noneSSrequiring a court to advise a criminal defendant of the perils of proceeding with substitute counsel after the court has *granted* a motion for substitution of counsel. Having made the motion for substitution, Solomon should have realized the risks inherent in substituting counsel.[4]

## VI.

Solomon argues that the court abused its discretion by granting the government's challenge of a juror for cause. The prospective juror suffered from an obsessive compulsive disorder that he said affected him adversely from time to time. To alleviate this condition, the juror took medication and received treatment from a psychiatrist. The court asked the juror whether he would be able to focus sufficiently on the case. He responded that "[t]here's no way to know. Most of the time, yes, I'd be able to focus on the case." The government successfully challenged that prospective juror for cause.

A court may excuse for cause any juror who is incapable, by reason of mental or physical infirmity, to render satisfactory service. 28 U.S.C. § 1865(b)(4) (2001). A court has broad discretion to determine whether to excuse a juror for cause. *United States v. Gonzalez-Balderas*, 11 F.3d 1218, 1222 (5th Cir. 1994). Thus, we reverse only for abuse of discretion. *Id*. The court properly exercised its discretion in concluding that the prospective juror's mental condition prevented him from rendering satisfactory service. This determination finds substantial support in the record.

## VII.

Solomon contends that the court violated the Sixth Amendment by unduly restricting his lawyer's cross-examination of Lisa Stevens, Solomon's co-defendant. We review restrictions on cross-examination for abuse of discretion. *United States v. Freeman*, 164 F.3d 243, 249 (5th Cir.), *cert denied*, 526 U.S. 1105 (1999). If we find abuse, we employ the harmless error doctrine. *United States v. Townsend*, 31 F.3d 262, 268 (5th Cir. 1994). To obtain relief for an unduly limited cross-examination, "a defendant must show that the restrictions were [plainly] prejudicial, based on the overall strength of the prosecution's case, the circumstances surrounding the challenged testimony, the importance of that testimony, and its corroboration or contradiction elsewhere at trial." *United States v. Gray*, 105 F.3d 956, 965 (5th Cir. 1997) (quotation marks omitted).

During cross-examination, Solomon's lawyer asked Stevens why her sentencing had been postponed. Counsel intimated that the government had postponed sentencing because

---

[4] *Cf. United States v. Kizzee*, 150 F.3d 497, 500 (5th Cir. 1998) (concluding that there was a fair trial after the court let defendant assume his own defense); *United States v. Jackson*, 50 F.3d 1335, 1340 n.6 (5th Cir. 1995) (declining to find a Fifth Amendment due process violation where lawyer had seven days to prepare for trial).

it did not trust her until she had testified. She responded that her pregnancy had caused the delay. At that point, the court stated that the question was wholly conjectural and told counsel to ask a question for which Stevens would know the answer. In another instance, Solomon's lawyer attempted to question Stevens regarding her involvement in a separate business entity. The government objected on relevance grounds, but the court allowed Solomon to proceed "for a little bit" before ending that inquiry.

We are hard-pressed to find abuse of discretion in limiting the cross-examination. Both lines of questions constituted nothing more than "fishing expeditions." The court allowed Solomon's lawyer to cross-examine Stevens in a manner consistent with the Sixth Amendment. Pursuant to its discretion, however, the court placed limitations on cross-examination to prevent irrelevant discussion. *See, e.g., United States v. Perez*, 217 F.3d 323, 330 (5th Cir.), *cert. denied*, 531 U.S. 973 (2000). Solomon does not show how the court's instruction to his lawyer to conduct a relevant and timely cross-examination done was "[plainly] prejudicial." *Gray*, 105 F.3d at 965.

### VIII.

Solomon argues that the court erred by not giving a definition of the term "specific intent" as part of the jury instruction. Because Solomon did not object, we review for plain error. *Richardson*, 168 F.3d at 839 n.9. Though it did not present a definition of "specific intent," the court instructed the jury that, to find Solomon guilty, it would have to find that he acted with "the specific intent to commit fraud."[5] Specific intent concerns willful and knowing engagement in criminal behavior, while general intent concerns willful and knowing acts. *United States v. Berrios-Centeno*, 250 F.3d 294, 298-99 (5th Cir. 2001). Because its instruction made plain that a finding of guilt required the conclusion that Solomon intended to commit the criminal act of fraud, the court did not commit plain error in formulating the jury instruction.

### IX.

Solomon contends that the upward departure from the sentencing guidelines was unreasonable. We review an upward departure for abuse of discretion. *Koon v. United States*, 518 U.S. 81, 98 (1996); *United States v. Nevels*, 160 F.3d 226, 229 (5th Cir. 1998). Federal sentencing guidelines establish ranges of criminal sentences. *Koon*, 518 U.S. at 85. A court must impose a sentence within the applicable guideline range if it finds the case to be typical of the sort envisioned by the guidelines. *Id.* Should the court find the case to be atypical because of "aggravating or mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," the court may depart from the guidelines and impose a sentence that is greater than what the guidelines prescribe. 18 U.S.C. § 3553(b) (2001).

In *Koon*, the Court outlined the questions a

---

[5] The court defined "knowingly" as an act "done voluntarily and intentionally, not because of mistake or accident." The court defined "intentionally" to mean "that the act was committed voluntarily and purposefully" and that it is "reasonable to draw the inference and find that a person intends the natural and probable consequences of acts done or knowingly omitted."

court should address in considering a departure:

1) what features of this case take it outside of the guidelines' "heartland" and make of it a special or unusual case?

2) has the sentencing commission forbidden departures based on those features?

3) if not, has the commission encouraged departures based on those features?

4) if not has the commission discouraged departures based on those features?

*Koon*, 518 U.S at 95. Should the court depart from the guidelines, it must state "the specific reason for the imposition of a sentence outside the guideline range." § 3553(c)(2).

The court elaborated on the features that took this case outside the guidelines' "heartland," noting that Solomon's prior convictions were similar to the current conviction, which indicated a great likelihood of recidivism. Solomon's conduct involved violating the trust of numerous victims and swindling them of millions of dollars. He violated a court order to cease and desist from engaging in fraud, continued to operate his scheme even after his arrest and conviction, and made veiled threats to the prosecutor after his conviction. The court did not abuse its discretion in granting an upward departure.[6]

X.

Solomon avers that the district court impermissibly "double counted" when it assessed an upward departure and sentencing enhancements for mass marketing, use of sophisticated means, more than minimal planning, and abuse of a position of trust. We note, initially, that the court did not apply the mass marketing and abuse-of-position-of-trust-enhancements. Thus, these two enhancements did not constitute double counting. We normally review a court's interpretation of sentencing guidelines *de novo*. *United States v. Loe*, 248 F.3d 449, 463 (5th Cir.), *clarified*, 255 F.3d 228 (5th Cir. 2001). Solomon did not object to the more-than-minimal-planning enhancement or the use-of-sophisticated-means enhancement. Accordingly, we review the application of these enhancements for plain error. *Richardson*, 168 F.3d at 839 n.9.

Double counting is permissible where "[e]ach enhancement targets different aspects of a defendant's behavior." *United States v. Scurlock*, 52 F.3d 531, 540 (5th Cir. 1995). Solomon's conduct involved more than minimal planning, because it entailed repeated acts over a period of time and numerous victims. Solomon's conduct involved sophisticated meansSSshell companies, offshore bank accounts, supposed international securities traders, Ponzi transactions, and professionally designed offering documents. The challenged enhancements and departures may overlap in some regards. When one compares the explanations given for each application, however, it is apparent that they measure different aspects of Solomon's behavior. Accordingly, the court did not commit plain error.

AFFIRMED.

---

[6] *See Nevels*, 160 F.3d at 229-30; *United States v. Rosogie*, 21 F.3d 632 (5th Cir. 1994).